JUDGE PRYOR
delivered the opinion oe the court.
On the 7th of August, in the year 1872, Robert Atwood, a resident of the city of Louisville, applied to R. H. Woolfolk and S. S. Nicholas to aid him in raising money to defray, as he represented at the time, some necessary family expenses. These parties, for the purpose of accommodating Atwood and without any other consideration in conjunction with him, made what they supposed to be at the time a bill of exchange for five hundred dollars, drawn by S. S. Nicholas, accepted by Atwood, payable to R. H. Woolfolk, and indorsed in blank by the latter. The body of the bill was not filled for any amount, but in the margin, as is usual Avith such paper, Avere the figures denoting the amount to be inserted. When Nicholas signed the paper the whole of it Avas blank, except the printed portion of the bill and the marginal figures $500, and at the time Woolfolk affixed his signature the body of the bill was blank as to the amount and place of payment, the words “Bank of America, New York,” having been inserted after he had signed it. The paper when Nicholas signed it as drawer read as folloAi's:
“ $500. Louisville, August 7,1872. “........pay to the order of..... .......dollars, value received.
S. S. Nicholas.”
When Woolfolk indorsed the paper it Avas as follows:
“ $500. Louisville, August 7, 1872.
“Ninety days after date pay to the order of R. H. Wool-folk .....dollars, value received. Payable at office.
S. S. Nicholas.
“ Robert Atwood, Louisville, Ky.”
In this condition the paper was taken possession of by Atwood, and altered by him by the addition of another cipher to the marginal figures so as to make them $5,000 instead *508 of $500, and inserting in the body of the note, in his own handwriting, the words “ five thousand dollars,” so as to make the amount correspond with the marginal figures as altered. The place of payment was also designated by inserting the words, “Bank of America, New York.” All of the paper except the printed matter and the signatures of the drawer and indorser is in the handwriting of Atwood.
The bill as altered and filled up by Atwood is as follows:
“ $5,000. Louisville, Ky., August 7, 1872.
“Ninety days after date pay to the order of R. H. Wool-folk five thousand dollars, value received. Payable at office Bank of America, New York. “S. S. Nicholas.
“ Robert Atwood, Louisville, Ky.”
And indorsed in blank by R. H. Woolfolk.
The bill on the day it bears date and as fraudulently altered and filled up was presented by Atwood to the Bank of America in Louisville, discounted by that bank, and the proceeds paid over to him. The evidence shows that none of the bank-officers had any knowledge of the fraud of Atwood, or were apprised in any way that he had altered or changed the figures in the margin. It is also conceded and clearly appears from the facts that neither the drawer (Nicholas) nor the indorser (Woolfolk) had given any authority to Atwood to so alter the paper, nor did they have any knowledge of their liability by reason of its execution until its protest for nonpayment in New York. The Bank of America, being the dona fide holder and owner of the bill, instituted this action in the Jefferson Court of Common Pleas against Atwood, Nicholas, and Woolfolk to recover the amount due thereon, with interest, etc.
The defense by Nicholas and Woolfolk is in effect a special plea of non est factum. It is alleged in their answer that “ after the drawing and delivery of said bill of exchange for $500 the same was without their knowledge and consent falsely *509 and fraudulently altered and changed in the following manner, viz.: the amount thereof was falsely and fraudulently, and without their knowledge, consent, or authority, increased from five hundred -to five thousand dollars;” and the additional defense by Woolfolk that thé words “ ‘payable at office Bank of America, New York,’ after the words ‘ value received/ were falsely, fraudulently, and without his knowledge, consent, or authority added to and inserted in said bill of exchange, and the plaintiff had notice and knowledge of said alteration at the time it took and became the holder and owner of said bill of exchange.”
After the evidence was closed Woolfolk, against the objections by counsel for the bank, was permitted to file an amended answer in explanation of his former answer, in which it is stated “ that he meant only to say in the first answer that the words ‘Neio York’ were fraudulently inserted in the bill, and not the words ‘payable at the Bank of America, New York,’' his meaning being that by inserting the words ‘New York’ it made the paper falsely read ‘payable at the Bank of America, New York.’ ”
Upon the hearing below a judgment was rendered against all the parties to the bill, from which Woolfolk prosecutes this appeal. The substance of all the instructions given at the instance of counsel for the bank is that if no change or altera-" tion was made of the bill after it came into the possession of the bank, and that the bank knew of no change or alteration having been previously made, or of any limitation on the power of Atwood by those who signed the paper for his accommodation, they must find for the bank. The jury were also told for the plaintiff (the bank) that the figures at the top or margin of the bill are not a material part of the bill; and if any change was made in them, that change alone does not affect the bill.
The court was asked by counsel for Woolfolk to instruct th'e-' jury “that the insertion of the third cipher at the upper left- *510 hand margin of the bill after "Woolfolk had indorsed it, without his knowledge or consent, released him from liability; or if the words ‘New York’ were inserted after Woolfolk indorsed it, without his knowledge or consent, they must find for him. That the figures at the upper left-hand margin at the time the paper was signed by him was a limit to the authority of Atwood, or any one else, to fill the rest of the paper then blank, and could not be exceeded so as to vest plaintiff or any assignee with the right to recover thereon if filled for a larger amount or made payable in New York without the consent of Woolfolk.”
The instructions asked for by Woolfolk were all refused, and under the issue made by the instructions given for the bank the jury was required to find for the bank unless it had knowledge of Atwood’s fraud.
The important questions in the case arise upon the instructions given and refused, counsel for appellant also maintaining that the holder of such paper upon discounting it must be held to reasonable and ordinary diligence, and if he takes it under such circumstances or with such blemishes on its face as would put him upon inquiry and fails to make any, he must abide the consequences.
The president of the bank testifies that Atwood came to him in the morning of the day the paper was taken by the bank and wanted to borrow five thousand dollars 'with the names of Nicholas and Woolfolk, and was told that the paper would be taken with their names, payable in New York. Atwood then had no paper with him, but left the bank and returned with the bill in the form it is now in; that no change, alteration, or addition was made of the paper in his presence or with his knowledge.
The cashier (McClarty) states that the bill was handed to him and discounted as it now appears, and that no alterations, additions, or erasions were made within his knowledge; that *511 he knew of no arrangement between Atwood and Woolfolk as to the manner in which the paper should be drawn or used.
There is no testimony in conflict with these statements except the deposition of Atwood, who states that his recollection is that the words “New York” were added to the bill at the Bank of America, and that McClarty, the cashier, was present. He further states that at the time Nicholas signed the paper and Woolfolk indorsed it the marginal figures were five hundred dollars instead of five thousand dollars, and that the whole body of the bill was blanJc. This deposition was read to the jury against the objection of counsel for the bank, and is one of the errors complained of as affecting its rights. We are unable to see in what way the reading of this deposition prejudiced the bank.
The appellant attempts by Atwood’s testimony to establish the scienter on the part of the bank-officers; but while their witness states that the words “New York” were inserted at the bank, he also swears that when the bill left the hands of Nicholas and Woolfolk the whole body of it was blank. If then the statement of appellant’s own witness is true—and this, upon the facts appearing in the record, he ought not to be allowed to deny—Atwood had the implied authority as between the parties to the bill and innocent holders to fill up the blank in the body of the bill to correspond with the marginal figures already altered by him, and also to designate his own place for payment.
This witness having been introduced by appellant, he c%n not accept such of his evidence as tends to make out his defense, and reject that portion of it favorable to the adverse party. Atwood’s statements as to the condition of the bill after it was indorsed show clearly that appellant was mistaken as to the facts alleged in his amended pleading, to the effect “that the place of payment was inserted in the bill at the time he indorsed it.”
*512 It may be regarded therefore as established that appellee took the bill from Atwood in good faith for value, and in the absence of any knowledge of Atwood’s fraud; the verdict of the jury upon the issue made by the instructions being sustained by all the evidence in the case.
The instructions offered by appellant were properly refused. The principle embodied in each of these instructions makes the bank liable for the negligent act of Woolfolk in indorsing a paper that enabled Atwood, for whose accommodation it was made, to fill up the blanks for any amount he saw proper, and thereby obtain money from those who not only confided in Atwood’s integrity, but in the honor and credit of those who were his indorsers.
The marginal figures indicated the sum for which the paper was to be filled, but can only be regarded as a material part of the bill affecting the rights of innocent holders for value where such parties have knowledge of the limitation placed upon the power to fill blanks. If the bank had inserted the words five thousand dollars in the body of the bill, with the marginal figures pointing to the limitation of the indorser’s liability, or had sanctioned such an act on the part of Atwood by discounting the paper with a knowledge that he had filled the blank without right, the indorser could not be held.
In the case of Henderson v. Bondurant (39 Missouri) the plaintiff when he took the note filled it up for a larger amount than the marginal figures, and was necessarily apprised of the extent of the liability of the surety or indorser.
Story on Bills (42) states the rule to be as follows: “The sum is sometimes expressed in figures in the superscription, as well as in letters in the body of the instrument, for greater caution ; but' if the sum in figures differs from the sum in words in the body of the instrument, the latter will be deemed the true sum, and parol evidence is inadmissible to establish that the sum intended was not that stated in words in the *513 body of the instrument, but was that stated in the figures in the margin.” The same rule is laid down in 1 Parsons on Bills, p. 28.
In Smith v. Smith (1 R. I. 398) it was held “that the figures in the margin are merely a memorandum for convenience and form no part of the bill, and an alteration in them without the consent of the drawer, making them conform to the body of the instrument, does not vitiate the bill.” There is a material distinction, however, between filling up the body of the bill by the holder increasing the amount from the marginal figures before him and altering the figures, as in the Rhode Island case, so as to make them correspond with the amount already inserted in the body of the instrument; in the one case the liability is increased, and in the other not. In the present case the bank made no alteration in the figures or words in the body of the bill, but is the innocent holder of a paper with the marginal figures and the sum inserted in the instrument corresponding, and therefore the question as to the change of the figures can not affect the rights of the bank.
Woolfolk states that the paper, when it left his hands, contained the words “payable at the Bank of America,” and that the words “New York” were afterward inserted, making it read “payable at the Bank of America, New York.” A careful examination of the original bill now before us leads to the conclusion that in this regard he is mistaken. The words “Bank of America, New York,” were evidently written with the same pen and at the same time; and, although it is in the same handwriting of the remaining portion of the body of the bill, the ink is different, and the words inserted with a bolder or heavier stroke of the pen; and in arriving at this conclusion we are aided by the original answer of the appellant, -in which he charges that these words were out of the bill when he signed it; and, although this statement is attempted to be explained in an amended pleading, we are satisfied his *514 attention was directed more to the amount for which he was making himself liable than the place of payment.
In alluding to the facts and circumstances connected with the parties to this paper prior to its discount by the bank, the >only purpose in view is to show that by reason of the imperfect condition of the paper in leaving blanks, etc, Atwood was vested by legal implication with authority to fill the blanks to suit his own purposes as between the original parties to the bill and an innocent holder. What liability the parties to the bill intended to assume and the facts outside of what appears on the face of the- paper developing the fraud of Atwood are not the legitimate subjects of inquiry in this case. If this' skeleton of a bill was signed and indorsed by. the parties sought to be charged, it is immaterial whether the act of Atwood increased their liability or not. As between the indorsers and an innocent holder they are liable for the amount of the bill. The blank bill was indorsed in blank by Woolfolk upon the faith he had in the integrity of Atwood, and ■when this confidence has been betrayed and a fraud practiced the party trusting most must lose, and not the innocent holder who takes the paper as much upon the credit of the indorser as that of Atwood, for whose benefit the paper was made.
It is now the recognized doctrine, both in this country and in England, “ that a bona fide holder of a negotiable instrument for a valuable consideration, without notice of facts which impeach its validity between antecedent parties, if he takes it under an indorsement made before it becomes due, holds the title unaffected by these facts, and may recover thereon, although as between antecedent parties the transaction may be without any legal validity.” (Swift v. Tyson, 16 Peters, 1.)
The English case of Gill v. Cubitt established for a time the contrary doctrine, holding that where a party before the transfer or delivery of a bill was in possession of facts affecting the title that should put him upon the inquiry and failed *515 to make it, and the title proving defective, the loss is with the holder, and not with the indorsers or those primarily liable. This doctrine was discarded in a later English case of Goodman v. Harvey, Lord Denman delivering the opinion; and in the case of Goodman v. Simonds (reported in 20 Howard, 365) the Supreme Court, in an able review of all the authorities bearing, on this question, Justice Clifford delivering the opinion, adheres to the doctrine in Swift v. Tyson in the following language: “That question was not' one of new impression at the date of that decision, nor was it so regarded either by the court or the learned judge who gave the opinion; on the contrary, it was declared to be a doctrine so long and so well established, and so essential to the security of negotiable paper, that it was laid up among the fundamentals of the law, and required no authority or reasoning to be brought out in its support. . . . The word notice, as used by this court on the occasion referred to, we think must be understood in the same sense as knowledge.”
Neither want of ordinary care nor gross negligence will divest the holder of his title, and he must be allowed to recover unless he obtains the paper mala fide. Lord Denman, in Goodman v. Harvey, said, “We are all of opinion that gross negligence only would not be a sufficient answer, where a party has given a consideration for the bill. Gross negligence may be evidence of mala fides, but it is not the same thing. When the bill has passed to the plaintiff without any proof of bad faith in him there is no objection to his title.”
In 2 Parsons on Notes and Bills, 279, it is said, “The title of such a holder is not defeated by proof that he was negligent or even grossly negligent in taking the note or bill, and that he omitted to make inquiries that common prudence dictated.” The facts showing what liability the parties intended to assume at the time they signed the paper in blank, being incompetent as against the bank and constituting no defense to *516 the action, the remaining inquiry is, was there any such defect or infirmity apparent on the face of the paper at the time it was discounted as gave to the bank actual or constructive notice of Atwood’s fraud; for if the paper makes known the infirmity, the holder will not be allowed to say that he took it without knowledge, but is put at once upon inquiry.
At the time appellant indorsed the paper it was not a complete bill, but blank as to the amount as well .as the place of payment; and not only so, but the marginal figures so placed as to enable the addition of another cipher without causing a suspicion upon the part of prudent business men or even the most careful observer. It left the hands of the indorser in this condition, not even accepted by Atwood, and was intrusted to the latter, for whose accommodation it was made as the mere skeleton of a bill upon which to raise the five hundred dollars. The bill when filled up was presented to the bank, all in the handwriting of Atwood, except the printed portion and the signatures of the drawer and indorser. The cashier was familiar with the handwriting of both Atwood and Woolfolk, who resided in the same city where the paper was discounted; they were men of high standing and their names familiar to most of the bankers by reason of their many bank transactions. The appellee, coming into the possession of such a paper, could not b® required to regard it as suspicious for the reason only that one cipher is made larger than another or with different ink, or the paper having such defects as would likely be discovered after information given as to its antecedents. Nor do we understand that such defects as appear on this paper are such as place a party upon inquiry.
If the bill on its face shows that the title is in another than the pai’ty presenting it, or is overdue, or has been protested for non-payment, or material parts of the paper altered, erased, or obliterated and other words supplied, the paper dishonoring itself, the party taking it must make inquiry or abide the loss *517 if it should appear that the bill was mutilated or changed without the consent of the parties to it. Whether such defects appear on the face of the bill is more a question of law 'than fact, and when there is nothing on the face of the paper to give such notice it is not only the province but the duty of the court to refuse to present such an issue to the jury. This rule does not work any hardship on the parties to the bill, as it was within their power to limit or regulate their liability by making a perfect bill as to amount, date, and place of payment. If the bill is complete, any alteration in a material part without the consent or authority of the parties to it renders it invalid in the hands of an innocent holder, as well as one who takes it with knowledge of the fraud. (Chitty on Bills, 100; 2 Parsons on Bills, 580.) But when blanks are left the party who is so confiding as to affix his signature to such paper, investing those for whose accommodation it is made with the power to fill blanks as well as the opportunity to practice fraud, must suffer the loss rather than the innocent holder. It is also said in Trigg v. Taylor (27 Mo. 547) “ that if a bill or note is so negligently drawn, with blank spaces left for the addition of other words or figures, so that alterations can be made without exciting suspicion, the loss ought to fall on the party in fault.”
The only evidence in the case conducing to show that the words “New York” were inserted after the words “Bank of America,” and after it left the appellant’s hands, is that of the party complaining. In opposition to this is the appearance of the paper itself; the original answer of appellant; the testimony of Nicholas and that of Atwood, the latter agreeing with Nicholas that the whole body of the bill was blank; nor could this interlining have placed the holder upon inquiry, for the additional reason that the blanks were in fact filled up by Atwood, for whose benefit the paper was made; and whether made payable at “ The Bank of America in Louisville” or “The Bank of America in New York,” there being *518 such a bank in each city, is immaterial; tlxe rights of the appellee can not be affected by it.
If this had been a complete bill, and the place of payment Louisville, and this had been changed to New York without the consent of the indorser, the latter would have been released; but no such defense can be allowed where the paper is only the skeleton of a bill with a blank indorsement upon it, and intrusted by the indorser with the beneficiary of the paper to make it perfect by filling blanks, unless there is knowledge brought to the holder before he obtains it. (Whitesides v. Northern Bank of Kentucky, 10 Bush, 501.)
Many bankers and experts also testify in regard to the appearance of the paper after the fi’aud of Atwood was made known, as well as to the manner and time at which the blanks must have been filled, and their conflicting views on these points Illustrate the necessity for the rule making the party liable who by his owix act has been instrumental in having such paper placed upon the market, and not the innocent purchaser. To determine otherwise would destroy the usefulness of negotiable paper as a circulating medium in commercial transactions. In a case like this the defense must allege and prove a knowledge of the facts constituting the fraud on the part of the holder—that is, such facts as would satisfy one of ordinary prudence and judgment of the infirmity in the bill; and the evidence of such facts and circumstances on the part of the holder as would lead to an inquiry by which only the facts constituting the fraud might be ascertained is clearly inadmissible, and constitutes ixo defense to the action.
No question can be raised on the present record as to the diligence or íxegligence of the bank in taking the paper. If discounted in good faith aixd for a consi deration (and this clearly appears), the indorser is liable. The authorities relied on by appellant are based mainly on the case of Gill v. Cubitt, and in conflict with the rule herein recognized, as well as the *519 weight of authority in this country and England. The facts relied on by the appellant presented no defense.
The judgment is therefore affirmed.