[See Case No. 5,510.]

---

## Case No. 9,301.

MATTOX et al. v. CADY et al.

[7 Am. Law Rec. 613.]

Circuit Court, N. D. Ohio. Oct. Term, 1878.

BANKRUPTCY—DEBTOR BUYING CLAIM—SET-OFF—
KNOWLEDGE OF INSOLVENCY.

Where involuntary proceedings in bankruptcy are commenced and prosecuted against a bankrupt under the U. S. bankrupt laws of 1867 [14 Stat. 517], and an assignee is duly appointed, who commences suit against a debtor of such bankrupt to recover the amount of an account due him, such debtor is entitled to have set-off against his indebtedness notes against said bankrupt which he may have purchased and become the bona fide owner and holder of, at any time before the petition in such voluntary proceedings was filed, although the debtor, when he purchased said notes, had knowledge that such bankrupt was then insolvent.

Petition: (1) Plaintiffs [Charles P. Mattox and others] in their petition set forth their title to sue as assignees in bankruptcy of Norris, Hull & Co. (2) That on petition of Lucius Beebee and others, filed in U. S. district court of Maine, on the 25th day of February, 1874, Norris, Hull & Co., on the 2nd day of March, 1874, were duly declared bankrupts, and April 17, 1874, plaintiffs were duly elected assignees. (3) April 15, 1876, plaintiffs commenced suit against defendants [George W. Cady and others, doing business as Geo. W. Cady & Co.] on an account due the bankrupts, amounting to $4,826.30, on which interest is claimed from Feb. 11, 1874.

Defendants' Answer: The account set up in the petition is not denied, but "set-off" of two notes held by the defendants is set up in the answer. Said two notes were made by Norris, Hull & Co. to their own order, and indorsed by themselves in blank. One note, dated Nov. 20, 1873, at four months, for $2,384.12; one other note, dated Dec. 2, 1873, at four months, for $2,384.11. These notes are alleged in the answer to have been made and indorsed and delivered about the dates of the same to Stoddard, Lovering & Co., and on the 11th day of February, 1874, sold, transferred and delivered to defendants; and they then and thereby became, and ever since have been, the owners of said notes, and that the said notes defendants ask may be allowed to them by way of set-off against plaintiffs' claim, and that they, defendants, may have judgment accordingly.

Reply of Plaintiffs: (1) That on the 11th day of February, 1874, and many months prior thereto, Norris, Hull & Co. had been hopelessly insolvent, of which Stoddard, Lovering & Co., and defendants at the time aforesaid (Feb. 11, 1874), had knowledge; and that said transfers of said notes, if any were made, were only colorable, and not bona fide, and made for the purpose of enabling Stoddard, Lovering & Co. to realize in full upon said note through defendants, who were indebted to Norris, Hull & Co., as set forth in the petition. Plaintiffs therefore deny that defendants are holders of said notes, except for benefit of Stoddard, Lovering & Co. (2) That on the 11th day of February, 1874, Norris, Hull & Co. were, and for several months prior thereto had been, hopelessly insolvent. Proceedings in bankruptcy were then threatened and imminent against Norris, Hull & Co., of which facts both Stoddard, Lovering & Co. and defendants had full knowledge. That defendants

were then and there indebted to Norris, Hull & Co., as stated in the petition. That said transfers of said notes, if any such were made, were made for the purpose of enabling Stoddard, Lovering & Co. to realize in full on said notes, instead of receiving a dividend thereon in bankruptcy, and for the purpose and with intent of preventing the plaintiffs from collecting the account against them, and with the purpose and intent of giving said Stoddard, Lovering & Co. an unjust and illegal preference over the other creditors of Norris, Hull & Co. And plaintiffs charge that if said notes were transferred at anything less than their face, such transfer was with intent and purpose of enabling Stoddard, Hull & Co. to realize more than they could in bankruptcy, and also with intent and purpose of making defendants to discharge their debt with said notes at their face, although defendants had paid for said notes much less than their face. That if any transfer of said notes were made by Stoddard, Lovering & Co. to defendants, they were not made in good faith, and defendants are not entitled to off-set the same against said account, but must be remitted to prove the same in bankruptcy. (3) That being ignorant as to whether any transfer of said notes was made to defendants, as stated in the answer, plaintiffs deny the same.

The case was argued elaborately by Willy & Terrill, for plaintiffs, who cited: Bump, Bankr. (9th Ed.) 420; Hitchcock v. Rollo [Case No. 6,535]; Sawyer v. Hoag, 17 Wall. [84 U. S.] 610–622; 8 Gray, 572; Wat. Set-Off, § 113; 2 Johns. 274; 20 Johns. 137; Hilliard, Bankr. 224; Avery & H. Bankr. 157; Bump, Bankr. (7th Ed.) 381, 382; 27 Ohio St. 365; and commented on Hovey v. Home Ins. Co. [Case No. 6,743], and Moore v. Harley [Id. 9,764].

J. P. Bishop, and C. J. Noyes, for defendants, argued the case at length, citing and commenting on the following authorities: Hitchcock v. Rollo [supra]; Rollins v. Twitchell [Case No. 12,027]; Sawyer v. Hoag, 17 Wall. [84 U. S.] 610; In re City Bank [Case No. 2,742]; Hovey v. Home Ins. Co. [supra]; Hunt v. Holmes [Case No. 6,890]; Fuller v. Sterglitz, 27 Ohio St. 361; 4 Ohio St. 593. On the point of notice of insolvency of Norris, Hull & Co., and putting on inquiry, etc., they cited Goodwin v. Simmons, 20 How. [61 U. S.] 343; Woolfolk v. Bank of America, 10 Bush, 504.

Before BAXTER, Circuit Judge, and WELKER, District Judge.

WELKER, District Judge. A jury in this case was waived, and the facts, with the evidence, were submitted to the court at a former term, but the case has been continued for argument and under advisement to this term, and has been argued at length, orally and elaborately; briefs have been submitted by counsel on each side. All the testimony in the case has been reduced to writing, and we have a full report of it before us, so there can be no controversy as to what was the testimony on the trial. The matters in controversy fully appear in the pleadings.

The questions presented and discussed by counsel are mainly as follows: 1. Were Norris, Hull & Co. insolvent when defendants acquired the notes which they seek to set off in this case? 2. Did the defendants know of the insolvency of Norris, Hull & Co. when they became the purchasers of these set-offs? 3. Was the purchase of the notes by the defendants a bona fide one for their own benefit, or for a valuable consideration? 4. Supposing the purchase to have been unobjectionable in other respects, what effect would knowledge on the part of the defendants of the insolvency of Norris, Hull & Co. when they made the purchase, have on their right to have the set-offs allowed?

First. As to the insolvency of Norris, Hull & Co. when the defendants purchased the notes in question, there seems to be no doubt. In fact it is admitted by their counsel. This being the case—

Second. Did the defendants know this when they acquired these notes? We have carefully considered this point. The testimony on the trial showed that before the transfer to defendants of these notes, Stoddard, Lovering & Co., a firm doing business at Boston, Mass., had knowledge of the insolvency of Norris, Hull & Co., but it nowhere appears that this was known to defendants, Cady & Co., unless they acquired such knowledge in the negotiations by which they acquired the notes in question. The defendant Awl was called as a witness on behalf of Cady & Co., to prove the purchase by them of these notes, and was cross-examined by plaintiffs' counsel, and defendant, Geo. W. Cady was called as a witness in behalf of plaintiffs, and both testified that they had no knowledge of the insolvency of Norris, Hull & Co. when they bought the notes. It is insisted, however, by plaintiffs' counsel, that the circumstances attending the purchase and what was said at the time, were sufficient to charge them with notice.

What were these circumstances, and what was said that should charge them with such notice? It appears that Norris, Hull & Co. were doing business in Portland, Me., and the defendants in the city of Cleveland, O. They had business transactions with Norris, Hull & Co. down to the very day of the purchase of these notes, Feb. 11, 1874. This business was done by correspondence. A short time before the purchase, they were applied by one Dresser, as agent of Stoddard, Lovering & Co., who offered to sell to them the notes in question, and if Cady & Co. received notice of the insolvency of Stoddard, Lovering & Co. it must have been during these negotiations. We have failed to find in the testimony anything equivalent to notice to

the defendants of this insolvency, when they took the notes. It is said that during these negotiations Cady & Co. asked Dresser why Stoddard, Lovering & Co. wished to dispose of this paper, and the reply was that they had more of it than they wanted to keep, and wished to dispose of some of it. This would not have a tendency to charge them with notice of the maker's insolvency for such transactions are of very common occurrence. Other circumstances and conversations at the time are referred to, to charge them with notice, such as the remark of Dresser that they were tricky, but taken altogether, come very far short of proving that Cady & Co. had knowledge of the insolvency of Norris, Hull & Co. when they made the purchase of these notes.

It is further insisted on in argument by plaintiffs' counsel that at least the circumstances were such as to put Cady & Co. on inquiry when they made the purchase that the makers of the notes were insolvent. Whatever might have been the law formerly on this subject, such is not the law now, when applied to negotiable paper. It is so held by the supreme court of the United States in Goodwin v. Simmons, 20 How. [61 U. S.] 243; also in Woolfolk v. Bank of America, 10 Bush, 504; and is now a fixed rule of law. To charge Cady & Co. with notice of the insolvency of Norris, Hull & Co., the testimony ought at least to be as strong as would be required in cases where preferences have been made which are declared void by the bankrupt act. But the testimony here falls far short of what would be required in such cases.

We think, therefore, that the evidence in this case is insufficient to show that the defendants had knowledge when they purchased these notes of the insolvency of Norris, Hull & Co.

3. Did they pay value for these notes, so as to be entitled to be treated as bona fide purchasers and holders, and not as trustees for Stoddard, Lovering & Co.? On this point, it clearly appears that they paid a sufficient consideration and were fully protected in this respect, and, so far as this point is concerned, they are entitled to have the set-off made as claimed by them. This, of course, determines the case in favor of the defendants. Here we might stop and not determine the further point, but as the point has been made and discussed we think it ought to be decided. This is the fourth point above stated which is, supposing the question of notice of the insolvency had been found against Cady & Co., but that in other respects they were bona fide purchasers, would they then be entitled to have the set-off allowed? This we are compelled to answer in the affirmative. We do this knowing that there is not complete accord in the decisions that have been made on this subject. If the purchase of a set-off is otherwise unobjectionable, knowledge that the debtor is insolvent at the time of the purchase will not prevent the set-off being made.

The law as to set-off under the bankrupt law of 1867 is as follows: "And be it further enacted, that in all cases of mutual debts or mutual credits between the parties, the account between them shall be stated, and one debt set-off against the other, and the balance only shall be allowed or paid, but no set-off shall be allowed of a claim in its nature not provable against the estate. Provided, that no set-off shall be allowed in favor of any debtor to the bankrupt of a claim purchased by or transferred to him after the filing of the petition." Of debts and proof of claims under the same law: "And be it further enacted, that all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing, but not payable until a future day a rebate of interest being made when no interest is payable by the terms of the contract, may be proved against the estate of the bankrupt." As we read the law of 1867, as to set-off and proof of claims, this case comes within the letter and meaning of the law. It was necessary, in establishing a rule under which claims against a bankrupt might be purchased and set off. Congress provided substantially, that this might be done at any time—in case of involuntary bankruptcy—before the filing of the petition. In this case, the claims sought to be set off were purchased two months before the petition was filed. To hold that notice of the insolvency of the bankrupt at the time of acquiring the claims sought to be set off—he being a holder for value would permit the set-off—would, in our opinion, in effect, be ingrafting upon this law what is not contained in it, and which congress never intended should be embraced within its meaning.

Finally, it has been said that the defendants' claims not being due when the petition was filed, they were not proper set-offs; under the statutes of Ohio. This question came up in Fuller v. Steiglitz, 27 Ohio St., on page 361. It is there said: "Again, many cases arising under the bankrupt laws adopt a broader rule."

The court, in 4 Ohio St. 593, say: "They have very little, if any, application to this case. Those statutes have generally permitted a set-off of mutual credits, whether due or not, and have therefore, administered a much broader equity than the ordinary law of set-off." The law of set-off, therefore, under the United States bankrupt law, is to be administered by that law, and by the express provisions of that law the claims set up as set-offs, as in this case, are, if mutual debts or credits, allowed, whether already matured or not.

We, therefore, come to the conclusion on the whole case that the defendants are entitled to have their set-offs allowed, and we give judgment accordingly. We are sustained in this decision by the cases: In re City Bank, etc. [Case No. 2,742], and Hovey v. Home Ins. Co. [Id. 6,743]; the holding in which cases we approve.