CASE 22—ACTION ON NOTE—JANUARY 7.

# Sebree Deposit Bank v. Clark.
## Same v. B. Herron.
## Same v. J. T. Herron.
## Same v. Todd.

APPEAL FROM WEBSTER CIRCUIT COURT.

1. PROMISSORY NOTES—CONSIDERATION—SURRENDER OF OLD NOTE.—
The surrender of a past due note is a sufficient consideration for
the execution of new notes renewing same, with new sureties.

2. APPEALS—FINDING OF THE CHANCELLOR ON QUESTIONS OF FACT
NOT CONCLUSIVE.—"It is a well settled rule of law that in equity
cases this court will consider the evidence introduced, and de-
termine therefrom what judgment should have been rendered."

3. FRAUD—EVIDENCE INSUFFICIENT.—The evidence in this case fails
to sustain the allegations of such fraudulent misconduct upon
the part of the principal as will release the sureties from lia-
bility upon the notes sued on.

JOHN W. LOCKETT, FOR APPELLANT. (F. M. BAKER AND YEA-
MAN & LOCKETT, OF COUNSEL.)

1. The acceptance by the bank of the notes in controversy as satis-
faction of a note then due the bank, is sufficient consideration
as to all parties to the renewal notes.

2. Though the principal in the renewal notes may have procured
them by fraud on the sureties and used them otherwise than the
sureties understood, they would be used, yet, being delivered by
them to their principal, who delivered the notes to the bank, the
sureties are bound unless they show that the bank when re-
ceiving the notes had actual or constructive notice that they
had been procured by fraud or were being misapplied. Brandt
on Sur. & Guar., Sec. 406; Daniel on Neg. Instr., vol. 1, Secs.
790-6; Frank v. Quast, 86 Ky., 649; cited by Daniels; Bank of
Commonwealth v. Curry, 2 Dana, 142; Smith v. Moberly, 10 B.
M., 266; Millett v. Parker, 2 Met., 608; Burks v. Wonterline and
wife, 6 Bush, 21; Magee v. Manhattan Life Ins. Co., 92 U. S.,
93-101.

Sebree Deposit Bank v. Clark.

3. The proof shows the bank received the notes without such notice
   and in good faith and applying them to the payment of a pre-
   existing debt does not alter the note.   First Daniels, Sec. 793 a;
   4th edition.

4. The bank was absent when the notes were signed by the sureties.
   The notes were sent to the bank by the principal debtor through
   the mail, the old note canceled and mailed to the principal,
   without the bank having had any communication with the sure-
   ties.   It was not obliged to warn the sureties of the risk they
   were taking and had no reason to believe they would be or had
   been deceived into signing the paper when it was received.   In
   this case the sureties are bound.   We cite especially on this
   point, the foregoing cases of Burks v: Wonterline, 6 Bush, 21;
   and Magee v. Manhattan Life Ins. Co., 92 U. S., 93-101.

5. The case of Ballard v. Russell, 16 B. M., 201, is not in conflict
   with the foregoing propositions.   The court held in that case
   that the note not being payable to the party receiving it in
   discharge of a pre-existing debt, in violation of the purpose for
   which the surety signed it, but payable to a bank which had
   never assigned or owned the note, the party receiving it was
   charged with the duty of inquiring into the purpose of the
   surety.   In these cases the notes were payable to the bank.

6. It was no diversion of these notes to use them in discharge of
   the old notes, as the effect was to enable the principal to
   further his business—the object of the sureties in signing the
   notes.

YEAMAN & LOCKETT AND BAKER & BAKER, FOR APPELLANT.

1. It did not devolve upon the obligee in the promissory notes in
   contest to inform the sureties of the insolvency of the principal
   even if it was aware of such insolvency.   Ham v. Greve, 34 Ind.,
   18; Farmers National Bank v. Branden (Pa.,) 22 Atl. Rep., 1045.

2. The obligee in the promissory note which surrenders an old note
   in lieu of the ones sued on is not bound by any fraudulent mis-
   representations by the principal to the sureties in the procure-
   ment of their signatures.   Whitaker v. Crutcher, 5 Bush, 621;
   Smith v. Moberly, 10 B. M., 266.

TOWERY & BOURLAND, FOR APPELLEES.

1. The signature of the sureties was procured by fraud and the bank
   was a party to the fraud.   Russell v. Ballard, 16 B. M., 201;

Rogge v. Cassidy, 12 Ky. Law Rep., 54; Burks v. Wonterline and wife, 6 Bush, 20; Graves v. The Lebanon National Bank, 10 Bush, 28.

S. V. DIXON, FOR SURETIES.

1. The notes sued on were without consideration.
2. The face of the notes showed that they were for borrowed money and the evidence shows that the sureties relied on Herron's statements that the notes were executed for that purpose, which was not true in fact. The bank had notice that it was the understanding of the sureties that these notes were executed for borrowed money. Russell v. Ballard, 16 B. M., 201; Ward v. Bank of Kentucky, 14 B. M., 283; Rogge v. Cassidy, 12 Ky. Law Rep., 54.
3. There was sufficient fraud practiced upon the sureties to justify and demand their release. Burks v. Wonterline and wife, 6 Bush, 20; Graves v. The Lebanon National Bank, 10 Bush, 28; Aaron v. Mendel, 78 Ky., 427.

Same counsel in a supplemental brief for the appellees, commented upon Bank of the Commonwealth v. Curry, 2 Dana, 142; Smith v. Moberly, 10 B. M., 266; Millett v. Parker, 2 Met., 608; Burks v. Wonterline and wife, 6 Bush, 20; Magee v. Manhattan Life Ins. Co., 92 U. S., 93-101 and cited in addition, Am. & Eng. Ency. of Law, vol. 24, p. 793.

S. V. DIXON, FOR APPELLEES, IN A PETITION FOR A REHEARING. (D. D. RAYBORN AND TOWERY & BOURLAND, OF COUNSEL.)

On construction: Russell v. Ballard, 16 B. M., 201; Rogge v. Cassidy, 12 Ky. Law Rep., 54; Am. & Eng. Ency. of Law, vol. 24, p. 793; Russell v. Ballard (Ky.), 63 Am. Dec., 526.

On fraud: Burks v. Wonterline and wife, 6 Bush, 20; Graves v. The Lebanon National Bank, 10 Bush, 28; Aaron v. Mendel, 78 Ky., 427; Keith v. Goodwin (Vt.), 73 Am. Dec., 345.

JUDGE GUFFY DELIVERED THE OPINION OF THE COURT.

These four cases practically involve the same questions of law and fact, and were heard together in the court below, and by agreement are heard together in this court. It appears that J. T. Herron was a merchant in Dixon, Ky., and some time in the year of 1894 the appellant loaned to

him about $2,500, with G. P. Herron as nominal surety, which note was renewed once, if not oftener, the last note falling due March 27, 1895. Shortly before the note became due the appellant informed said Herron that it desired payment of the note when the same fell due, which he promised to pay, but upon maturity failed to pay same; and appellant insisted upon either payment of the note or additional security, which Herron agreed to give, but suggested that it would be easier for him to give security if the appellant would divide the debt into smaller notes, which it agreed to do, allowing the debt to be divided into five notes. Very soon thereafter Herron sent to appellant the four notes in controversy herein, together with the fifth one, which is not involved in this controversy; which notes were accepted by the appellant, and the $2,500 note sent to the said Herron. In August thereafter the appellees instituted their several actions, seeking a cancellation of the notes, or at least their release therefrom, upon the ground of no consideration, and upon the further claim that the execution of the notes was procured by fraud and misrepresentation upon the part of Herron, and also upon the part of appellant; alleging, among other things, the representation and agreement that Herron was to get actual cash money to aid him in his business in the purchase of goods, etc. The appellant, by answer, denied all the averments of the petition, in so far as the plea of no consideration was concerned, or any fraud or knowledge of fraud or misrepresentation having been made to the appellees, as well as denying any knowledge of the insolvency of Herron at the time the aforesaid agreement was made and at the time the notes were accepted and the old notes surrendered. After the issues were fully made up and proof taken, the circuit judge rendered a judgment in favor

of the appellees, releasing them from any liability on the several notes signed by them, and from that judgment these appeals are prosecuted.   It is shown by the testimony that some time in April, after the execution of the notes, Herron made an assignment, and that his indebtedness amounted to between $40,000 and $50,000, and his assets to about $15,000.   There is some proof introduced tending to show that, some time before the execution of the notes in contest, he had suffered some loss by fire, but to what extent it does not appear.

It is the contention of appellees that the appellant knew of the insolvency of Herron, and that it conspired and agreed with him to divide the large note into small notes for the purpose of enabling Herron to obtain sureties, which he could not otherwise have obtained, and that it aided Herron in misleading the sureties as to his condition and as to the purpose for which the notes were being executed.   It is the contention of appellant that it was not aware of Herron's insolvency, and that it was simply a business transaction; that it desired to collect the $2,500 note, but inasmuch as Herron could not or would not pay it when due, that it desired and demanded better security; and that at the instance of Herron himself, and without any intention of aiding him in defrauding anybody, and without any information or expectation that Herron would do so, it agreed to the division of the debt, as hereinbefore stated.

It is a well-settled rule of law that, if the obligee of a note obtains the signature of a surety for the principal by any fraudulent misrepresentation or concealment of material facts in regard to the condition of the principal, the surety will be released.   It is also well settled that, if the appellant had notice that the sureties

had signed the notes in question for a specific purpose, it would have been bound to have applied same to that purpose; otherwise the sureties would not be bound. It nowhere appears that appellant knew to whom Herron would apply to go his security, and it seems certain that appellant had no communication, direct or indirect, with the appellees in regard to signing or not signing the notes, nor any notice as to any representation made to appellees respecting the purpose for which the notes were executed. The appellant's place of business was several miles distant from Dixon, and also several miles distant from appellees, and it nowhere appears that appellees and the officers of appellant were acquainted with each other.

It is suggested on behalf of appellees that the notes in question indicated that money was to be furnished, and therefore appellant had notice that they were executed for that purpose; but the notes appear to be in the regular form used in executing notes either to obtain money or renewal of an antecedent obligation. It is not an extraordinary proceeding for a creditor who desires to collect a debt, and is unable to do so, to attempt to procure sufficient security, and in this case it seems certain that the surety on the $2,500 note was notoriously insufficient. Nor is it strange that Herron would believe that he could obtain security more readily by dividing the debt into smaller notes, for it is quite reasonable that some friends would be willing to sign a note for $500 or $600 when they would not desire to incur as large an obligation as $2,500, and the fact that the debt in question was so divided certainly does not establish a fraudulent intent upon the part of Herron. Nor was it sufficient notice to appellant that Herron contemplated perpetrating a fraud upon his confidential friends. It is true that Herron was insolvent at

the time, and perhaps he ought to have known then that he could not recover from his financial embarrassment; but it is a well-known fact that many men are hopeful, and are loath to believe that they can not recover or extricate themselves from financial embarrassments. It may be that Herron in fact believed that by obtaining four months' additional time on the debt in question, he could better his financial condition, and escape utter financial ruin. The surrender of the $2,500 note, and the extension of further time, by appellant, constituted a sufficient consideration for the execution of the notes in question; hence appellees are not entitled to exoneration on the plea of no consideration.

It is suggested by appellees that, if there is any evidence to support the finding of the court below on a question of fact, this court will not reverse, but treat such finding in the same manner as if it was the verdict of a properly instructed jury. Such, however, is not the rule of this court in equity cases. It is a well-settled rule of law that in equity causes this court will consider the evidence introduced, and determine therefrom what judgment should have been rendered. We are unable to say that the evidence in this case conduces to show, in a reasonable degree, that appellant was guilty of any unusual, improper, or fraudulent acts in connection with the execution of the notes in question. It therefore results that the court erred in rendering the several judgments. The judgments are therefore reversed, and causes remanded, with directions to set aside the judgments appealed from, and to dismiss the several petitions, and for proceedings consistent herewith.