CASE 86.—ACTION BY DUDLEY GREGORY, &c., AGAINST
        MAGDALENA HERMAN, REVIVED AGAINST HER
        EXECUTOR.—February 4.

# Herman's Exor. v. Gregory

Appeal from Jefferson Circuit Court; Chancery
Branch (First Division).

EMMET FIELD, Judge.

Judgment for plaintiffs, defendant appeals—Affirmed.

1. Bills and Notes—Signature in Blank—Liability.—Under the
   common-law rule in Kentucky, one signing his name to a
   blank note and delivering it to another to be used to raise
   money is responsible for whatever sum the latter inserts in
   the body of the note.
2. Same—Consideration—Statutes—"Valuable    Consideration."—
   Where payees of a note, on receiving it, paid a specified sum
   to banks, which the maker owed, there·was a valuable con-
   sideration for the note, within Negotiable Instruments Law
   (Acts 1904, p. 220, c. 102), section 25, providing that an ante-
   cedent debt constitutes value.
3. Same—"Holders for Value"—Statutes.—A payee of a note,
   who on receiving it paid a specified sum to banks, which
   the maker owed, is a holder for value within Negotiable In-
   struments Law (Acts 1904, p. 220, c. 102), section 26, pro-
   viding that, where value has been given for the instrument,
   the holder is a holder for value.
4. Same—Signature in Blank—Liability.—G., P., and B. bought
   property and gave their joint notes for the price; each to be
   liable for one-third thereof.  B. was unable to pay, and G.
   and P. agreed to pay his share on B. securing them by a
   note with a third person as surety.  B. procured the third
   person's signature to a blank note on the understanding that
   he would use it to borrow money.  B. filled in the blanks,
   signed it as maker, and delivered it to G. and P., who paid

B.'s share.  Held, that the note was used for the purpose for which the third person signed it, and he was liable as surety.

W. M. SMITH for appellant.

GIBSON, MARSHALL & GIBSON and NEWTON G. ROGERS for appellees.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

The appellees (plaintiffs below) instituted this action in the Jefferson circuit court to recover judgment on a note against Peter Bitzer and Magdalena Hermann. Magdalena Hermann filed an answer pleading non est factum. Bitzer filed a separate answer pleading his discharge in bankruptcy as a bar to the debt sued for. Issue was joined on the plea of Magdalena Hermann, and the case was heard by the trial court on the law and the facts; a jury being waived by the parties. The court filed a written statement of the facts ascertained by him from the evidence and his conclusion of law thereupon. These are as follows:

"The plaintiffs Dudley Gregory and W. T. Pyne and the defendant Peter Bitzer bought a brickyard and executed their joint notes for the purchase money. These notes were held by the Louisville National Banking Company, and there was another note of Bitzer's for $1,200, but upon which Gregory and Pyne were also bound, held by the First National Bank of Louisville. These notes had been renewed from time to time, and when the banks finally insisted upon payment Bitzer was not able to pay his part, and suits were brought and judgment rendered upon most of them. Bitzer was in business and was anxious

for further time in which to pay his part of these debts. He asked Gregory and Pyne to pay the debts and promised that if they would do so he would secure them for the payment of his proportion by giving them a note payable in six months with his mother-in-law, Magdalena Hermann, as surety. They agreed to this, after ascertaining that Mrs. Hermann was solvent. Bitzer's share of the indebtedness was ascertained to be $5,009.71. On the 7th day of December, 1905, the plaintiffs and Bitzer met at the office of Gibson, Marshall & Gibson by agreement, and Bitzer produced a skeleton note with the name of Magdalena Hermann signed at the foot. Barrett Gibson, acting for the plaintiffs, filled in the note, and Bitzer signed it above the name of Mrs. Hermann, and Bitzer delivered the note so signed and filled in to the plaintiffs. The note then read as follows: '$5,009.71. Louisville, Ky., December 7, 1905. Six months after date we promise to pay to the order of Dudley Gregory and W. T. Pyne, five thousand and nine dollars and seventy-one cents with interest from date. Without defalcation, value received, negotiable and payable at the First National Bank of Louisville, Ky. Peter Bitzer. Magdalena Hermann.' The plaintiffs endeavored to discount this note, but were not able to do so and they are now the holders and owners of it. They paid off the several judgments and debts, including Bitzer's part thereof, as they had agreed to do.

"Mrs. Hermann alleges in her answer that in December, 1905, prior to the 7th day thereof, Bitzer brought to her a blank note and asked her to sign it as his surety, saying he wanted to use it for the purpose of raising or borrowing money, that with the distinct understanding that the note was to be so

used she signed it as surety, and that when the paper was presented to her it contained only this printed matter: '$......... Louisville, Ky., ............, 190... ........after date ........ promise to pay to the order of ........ dollars without defalcation, value received, negotiable and payable at.' She alleges that the note was diverted from the purpose for which she signed it, and that instead of using it to borrow money Bitzer used it to pay old debts then due for all of which the plaintiffs were bound with him. She pleads no consideration. Bitzer in his testimony says he did tell Mrs. Hermann that he intended to raise money on the note, and that she signed it with that understanding and for that purpose, but he admits that he did not tell plaintiffs that she signed for that purpose or upon any condition whatever. The plaintiffs did not know that she signed as surety for any other purpose than to enable Bitzer to carry out the arrangement he had made with them touching his pro rata of the debts. At the time of the trial Mrs. Hermann was too ill to testify in person or by deposition. Since the execution of the note sued on Bitzer has been adjudged a bankrupt and has secured his discharge.

"I conclude from these facts that as Bitzer produced to the plaintiffs a blank note with the signature of the person he promised to give as surety, and as he did not know the amount for which the note was to be given when he obtained Mrs. Hermann's signature, and for that reason could not complete it before she signed, and as the plaintiffs did not know until after they had performed their part of their agreement with Bitzer by paying the debts, nor until the answer of Mrs. Hermann was filed, that there was any restriction upon her suretyship, if such was

the fact, and furthermore that as Bitzer was pres-
ent and produced the note for the purpose of having
it filled in, Mrs. Hermann is bound by her signature.
Sebree Deposit Bank v. Clark, 105 Ky. 214, 48 S.
W. 1089, 20 Ky. Law Rep. 1155. As to the plea of
no consideration, Bitzer obtained six months' fur-
ther time on his pro rata of the debts by reason of
the execution of the note sued on, and that fact is
a sufficient consideration to support the promise of
the surety. Steger v. Jackson, 102 S. W. 320, 31
Ky. Law Rep. 434. For these reasons plaintiffs are
entitled to judgment against the surety, Mrs. Her-
mann, as prayed, and it is so ordered.''

After the judgment of the trial court was entered
Magdalena Hermann died, whereupon, by consent,
the action was revived in the name of her executor,
who filed grounds for a new trial, which, being over-
ruled by the court, this appeal is prosecuted here.

Appellant admits in his brief that his testator
would have been liable on the note as the law stood
prior to the adoption of the act of the General As-
sembly of the Commonwealth of Kentucky known as
the ''Negotiable Instruments Law'' (Acts 1904, p.
213, c. 102), but insists, as the transaction involved
herein arose subsequent to the adoption of the act in
question, that his testator's liability is to be measured
by the provisions of the new law, and that when so
measured she is not responsible under the facts as
found by the court. Appellant also concedes that,
under the common-law rule prevailing in this State
prior to the adoption of the negotiable instruments
act, if a party signed his name to a blank note and
delivered it to another for the purpose of being used
to raise money, the first is responsible for whatever
sum the second inserts in the body of the note. Bank

of Limestone v. Penick, 5 T. B. Mon. 25; Common-
wealth Bank v. Curry, 2 Dana, 142; Hall v. Common-
wealth Bank, 5 Dana, 258, 30 Am. Dec. 685; Smith
v. Moberly, 10 B. Mon. 266, 52 Am. Dec. 543; Jones
v. Shelbyville Fire, Life & Marine Ins. Co., 1 Metc.
58; Smith v. Lockridge, 8 Bush, 423; Woolfolk v.
Bank of America, 10 Bush, 504; Sowder v. Citizens'
National Bank, 12 Ky. Law Rep. 356; Stanley v.
Davis, 107 S. W. 773, 32 Ky. Law Rep. 1135. But he
earnestly insists that by section 14 of the Negotiable
Instruments Law (Acts 1904, p. 217, c. 102) his
testator, under the circumstances, is not liable on the
note because it changes the former rule. Section 14
is as follows: "Where the instrument is wanting in
any material particular, the person in possession
thereof has a prima facie authority to complete it by
filling up the blanks therein. And a signature on a
blank paper delivered by the person making the sig-
nature in order that the paper may be converted into
a negotiable instrument operates as a prima facie
authority to fill it up as such for any amount. In
order, however, that any such instrument when com-
pleted may be enforced against any person who
became a party thereto prior to its completion, it
must be filled up strictly in accordance with the
authority given and within a reasonable time. But if
any such instrument, after completion, is negotiable
to a holder in due course, it is valid and effectual for
all purposes in his hands, and he may enforce it as
if it had been filled up strictly in accordance with the
authority given and within a reasonable time." The
particular part of the above section relied on is as
follows: "In order, however, that any such instru-
ment when completed may be enforced against any
person who became a party thereto prior to its com-

pletion, it must be filled up strictly in accordance with the authority given and within a reasonable time." Now, the contention of the appellant is that Bitzer carried the skeleton note with his mother-in-law's name appended thereto to the appellees, and it was there filled up in their presence, and therefore they were charged with notice of any secret understanding between him and his mother-in-law as to the use he was to make of the note to which she had affixed her name. It is said that the evidence shows that, when Bitzer applied to his mother-in-law to sign the note as his surety, he told her that he wished to raise money for his business, and that, this being true, the use of the note to pay off an old indebtedness was a diversion of it from the purposes for which the surety had signed the paper, and therefore the appellees, who were the original holders with notice and not for value, have no claim against the surety.

Without wholly giving our consent to the contention of appellant, let us see whether his testator's estate can escape liability under the rule as laid down by himself. In the first place, were the appellees holders for value? That the note was delivered to them is not questioned. Section 25 of the Negotiable Instruments Law is as follows: "Value is any consideration sufficient to support a simple contract. An antecedent or pre-existing debt constitutes a value, which is deemed such, whether the instrument is payable on demand or at a future time." It is admitted that the appellees paid for Bitzer, upon receiving the note, $5,000, which he owed the banks, and therefore, under the very language of the statute, there was a valuable consideration for the note. Section 26 of the act is as follows: "Where value has at any time been given for the instrument, the

holder is deemed a holder for value in respect to all
parties who became such prior to that time." The
appellees, after the signature by appellant's testator,
as said before, paid off $5,000 of his debt. They are
therefore, under the letter of the law, holders for
value.

Now, what was the diversion which the appellant
claims rendered the note invalid in the hands of the
appellees? The facts are set up in Mrs. Hermann's
answer, and are as follows: "She says that said paper
was signed by no one at the time the same was pre-
sented to her by her codefendant, Peter Bitzer, and
she says that her codefendant, Peter Bitzer, stated
and represented to her that he desired to borrow or
raise some money and requested of her that she
should sign her name to said note as his surety,
and this defendant says that, as requested by her co-
defendant, and his surety, and with the distinct
agreement and understanding that the same was to
be used by her codefendant, Peter Bitzer, for the
purpose of borrowing money, she signed her name at
the bottom of said note, and which note was blank as
to the matters and in the particulars as hereinbefore
set out at the time she signed the same, and there was
no other signature signed or appended to said note.
She says * * * she handed the same (the note) to
her codefendant, Peter Bitzer, who received it from
her and afterwards and without her knowledge or
consent had the same filled out as it now appears,
and signed the same and delivered the same to the
plaintiffs herein in settlement of or in consideration
of a debt or obligation that was on and prior to the
time that this defendant signed said note due and
owing by her codefendant to the plaintiffs herein, and
she says that said note was not used by her code-

Herman's Exor. v. Gregory.

fendant to borrow or raise money, nor was any money loaned or advanced by the plaintiffs herein or either of them on said note, and she says she received no part of the consideration for said note and is not in any way liable therefor.'' Now, it seems to us that what took place, as shown by the uncontradicted testimony, was exactly what Bitzer told his mother-in-law he was going to do with the note. He told her he wanted to borrow some money, and she signed the note to enable him to do this. He borrowed the money sued for from the appellees at the time the note was delivered to them. It is true, they did not hand him the bills in his own hands with which to go and pay his debts to the banks; but they did what was equal to that—they went to the banks and paid his indebtedness themselves. Now, while the joint indebtedness of appellees and Bitzer was owed by each of them in whole to the banks, as between themselves each was responsible only for one-third of it. Bitzer was an active business man, and was being sued by the banks for debts amounting in the aggregate to $15,000. If he could not meet this indebtedness, he was a bankrupt, and his business would stop. He was exceedingly anxious to go forward with his business obligations, with the hope of being able to weather the financial storm with which he was threatened and to pay all of his indebtedness. The only chance he had to do this was to borrow from the appellees the money necessary to pay his part of the indebtedness with which they were all being pressed in the court. The appellees loaned him the necessary money upon his agreement to give them a note, upon which his mother-in-law was surety, for the amount advanced.

It seems to us on the statement of the answer and

on the facts as proved, giving section 14 of the law the construction contended for by appellant, that the note was filled out and used for the very purpose for which Magdalena Hermann had signed it as surety, and that there was no diversion whatever from that purpose. It is true, Peter Bitzer, in his testimony, changes the verbiage of what took place between him and his mother-in-law at the time she signed the note from that set up by her in her answer. He states that he told her he wanted her to sign the note in order that he could raise some money at the First National Bank for his business; but we apprehend, if there be a substantial difference between the statement in his testimony and that of her pleadings, that the pleadings will prevail.

For these reasons, we are of opinion that the judgment of the trial court should be affirmed, and it is so ordered.