JUDGE COFER
delivered the opinion oe the court.
The appellant C. H. Blakey signed a note as the surety of William Atkin to the appellee Johnson for the sum of $500. When signed the note read as follows, viz.:
“ Twelve months after date we or either of us promise to pay Thomas Johnson five hundred dollars for value received, with ten per cent interest from date. Wm. Atkin,
“September 11, 1874. C. H. Blakey.”
Blakey delivered the note to Atkin and Atkin to J. S. Stanley, who delivered it to Johnson, who loaned to Atkin on the faith of the note the sum of $500.
Atkin having become insolvent and been adjudged a'bankrupt, Johnson wrote to Blakey after the maturity of the note, demanding payment. Blakey remitted the amount by express and in post-ofSce orders, and the note was sent to him by mail.
*200 Soon afterward Blakey brought this suit in equity to recover back the amount paid on the note, on the ground that after he signed it, and before it was accepted by Johnson, it was, without his knowledge or consent, altered by adding, after the word date at the end of the note as it was when he signed it, the words, “Interest to.be paid semi-annually,” and that he paid it without knowledge of the alteration.
On the motion of Johnson an issue out of chancery was referred to a jury, to whom the court propounded these interrogatories :
1. “Was the note in controversy altered or changed after Blakey had signed it?
2. “ Did Johnson know it was altered (if it was so altered) before he took it and accepted it, or might he have known of its alteration before he accepted it by reasonable inspection?”
The jury responded: ;
1. “We the jury find that the note was altered after Blakey signed it.
2. “And we further find that Johnson did not know it was altered before he took and accepted it, and that he could not have known of its alteration, before he accepted it, by reasonable inspection.”
The appellant excepted to the order referring these questions, to a jury, and also moved for a new trial on the ground that the response of the jury to the second interrogatory was not sustained by the evidence.
The matter of referring questions of fact in equity causes to a jury in aid of the chancellor is always addressed to his discretion, and this court will not undertake to control his action in that regard unless there has been a palpable abuse of that discretion, which is not and could not be claimed to have been done in this case.
The evidence bearing upon the second proposition submitted to the jury was conflicting, but there was clearly no such pre- *201 - ponderan ce against the finding of the jury as to warrant this court in setting aside the verdict.
The body of the note was written by Blakey and the words “ interest to be paid semi-annually ” by Atkin, and it is claimed that it was and is patent to an ordinary observer that these different portions of the note were written by different persons, and that 'that fact ought to have put Johnson upon inquiry, and that he is therefore to be taken to have had constructive notice that the alteration was made after Blakey signed the note.
The jury and the circuit court were of a different opinion. The original note is before us, and we concur with them. The ink used in writing the different parts of the note, and we incline to think the pen also, was the same, and the hand-writings, though differing sufficiently to be readily distinguishable upon close inspection, are not strikingly different, and a non-expert would be quite likely upon casual observation to fail to notice that different persons had written each a part of the note.
But however this may be, we are satisfied that there was no such evidence on the face of the note as ought to charge Johnson with notice of the alteration. (Woolfolk v. Bank of America, 10 Bush, 514, 515.)
The pleadings, evidence, and interrogatories propounded by the court to the jury, as well as the briefs of counsel in this court, indicate that the parties regarded the question, whether Johnson had notice, actual or constructive, of the alteration, as the controlling question in the case.
We do not so regard it. The argument of appellee’s counsel is, that the note having been delivered by the appellant to Atkin for delivery to the payee, Atkin is to be treated as the agent of the appellant, and the alteration as the appellant’s act; or if Atkin is to be treated as a stranger then the spoliation of a writing by a stranger does not destroy its validity.
*202 Atkin was undoubtedly in a limited sense the agent of the appellant. But what was the scope of his agency? He certainly had no express authority to alter the note. The authority he had was to deliver it to the appellee, and from that no authority to alter its terms can be implied. When signed by the appellant it was complete in all respects, and the case is therefore wholly unlike those cited by counsel, in which the principal was held to be the agent of the surety to fill up blanks. In those cases the note could not perform the office for which the surety signed it unless the blanks were filled, and hence authority to fill them must be implied or the transaction, which was evidently meant to accomplish some object, would be vain and useless.
Nor is the case more nearly like those in which a writing was altered by a stranger after it had taken effect by delivery. In such cases the contract having been completed, it could not be destroyed by the subsequent spoliation of a third person, without the knowledge or consent of the obligee. In this case no valid contract ever existed between the appellant and appellee. The appellant being a surety, can only be bound by the very terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation he is bound, but no further. If he does not assent to an alteration of the terms of his undertaking it ceases, when materially altered, to be his contract, and has thenceforward no more force as to Kim than if the whole writing had been a forgery from the beginning, unless it had previously become effectual by delivery and the alteration be made by a stranger.
The note had not become effectual when the alteration was made, and when it was made the note ceased to be the act and deed of the appellant. The note accepted by the appellee was not the note signed by him, and on the facts already stated and without adverting to an important fact yet to be stated, *203 there can be no doubt, upon principle, that the note was void as to the appellant.
This conclusion is sustained by numerous authorities, only a few of which will be cited.
In Goodman v. Eastman (4 N. H. 455) the defendant put his name to a note for $20 as surety for Harford. Before the note was delivered to the payee, Harford, without the consent of the defendant, altered it to a note for $120, and then passed it to the payee. It was held that the defendant was not liable.
In Bank of U. S. v. Russell, &e. (3 Yates, 391) the defendants drew and signed a promissory note payable to Joseph Thomas or order, at sixty days. The note was made for the accommodation of Thomas and delivered to him. He, without their knowledge or consent, altered the date from the 9th to the 19th of the same month, and then discounted it to the plaintiff, who was ignorant that the alteration had been made. The defendants were held not liable.
In Wood v. Steele (6 Wall. 80) Steele & Newson made a promissory note, payable to their own order one year after date, and indorsed it to Wood. Upon the trial it appeared that Newson applied to Allis, the agent of Wood, for a loan of money on the note of himself and Steele. Wood assented, and Newson was to procure the note. Wood left the money with Allis to be paid over when the note was produced. The note was afterward delivered by Newson, and the money paid to him. Steele received no part of it. At that time it appeared on the face of the note that “September had been stricken out and October 11th substituted as the date. This was done after Steele had signed the note, and without his knowledge or consent. These circumstances were unknown to Wood and Allis. The court instructed the jury “that if the said alteration was made after the note was signed by the defendant Steele, and by him delivered to the other maker, New-son, Steele was discharged from all liability on said note.”
*204 The Supreme Court, without adverting to the fact that the alteration in the date was patent on the face of the note, held the instruction right, and that the fact that the alteration was made before the note passed from the hands of Newson, could not affect the result. He had no authority to make it.
We have considered the case thus far without stating the fact that there was sufficient blank space above the signatures and the date to contain the words inserted by Atkin. The word “date” at the end of the note as originally written is the only word on the line, and is on the extreme left side of the paper, and the signature of Atkins, which is first, is in the second line below it; the date, “September 11, 1874,” is on the line between them; thus leaving the whole of the line on which the word “date” is written blank, except that part occupied by that word, and on that line the words “ interest to be paid semi-annually ” are written. The note is on commercial note paper, and the words and letters appear a little crowded, but not sufficiently so to readily attract the attention of an ordinary observer. There was ample room on that line after the word “date” in which to write the date of the note, and it might have been placed there instead of being placed on the line below it, or the signature of Atkins might have been written on the same line with the date of the note; and if either had been done, it would not have been possible to introduce the added words without interlining them, which would probably have been such patent evidence that the note had been altered as to have required the appellee to make inquiry or take it at his peril. Without that unnecessary blank space the alteration could not have been successfully made.
“ There is a general principle which pervades the universal law-merchant respecting alterations, a principle necessary to the protection of the innocent and prudent from the negligence and fraud of others. That is, that when the drawer of the bill or maker of the note has himself, by careless execution *205 of the instrument, left room for any alteration to be made, either by insertion or erasure, without defacing it, or exciting the suspicions of a careful man, he will be liable upon it to any bona fide holder without notice when the opportunity which he has afforded has been embraced, and the instrument filled up with a larger amount or different terms than those which it bore when he signed it. The true principle applicable to such ■cases is that the party who puts his paper in circulation, invites the public to receive it of any one having it in possession with .apparent title, and he is estopped to urge an actual defect in that which, through his act, ostensibly has none. The inspection of the paper itself furnishes the only criterion by which a stranger to whom it is offered can test its character, and when that inspection reveals nothing to arouse the suspicions of a prudent man, he will not be permitted to suffer when there has been actual alteration.” (Daniel on Negotiable Instruments, sec. 1405.)
This principle is well sustained by adjudged cases (Garrard v. Hadden, 67 Penn. St. 83; Visher v. Webster, 6 Cal. 109; Rainbolt v. Eddy, 34 Iowa, 440; Haney v. Smith, 55 Ills. 224), and seems to us decisive of this case, especially in a court of equity, into which the appellant has come to be relieved.
The chancellor will not aid those who come to him for relief when they appear to have been guilty of the negligence which caused the mischief of which they complain.
Judgment affirmed.