## Commercial Bank v. Arden & Fraley.

(Decided November 2, 1917.)

## Appeal from Carter Circuit Court.

1. Bills and Notes—Negotiable Instruments Law—Endorsers.—Section 19, Negotiable Instrument Law, which provides that before a party to a negotiable instrument can be bound by his signature thereon, by an agent, that the agent must have authority in writing, includes an endorser.

2. Banks and Banking—Checks—Action to Recover From Banks.—Where the drawer of a check does not suffer any injury by its payment by the bank upon which it is drawn, the mere fact that the endorsement of the payee of the check was made thereon by an agent, without authority in writing from the payee to make the endorsement, does not give the drawer any right of action to recover the amount of the check from the bank.

3. Banks and Banking—Payment Upon Forged Endosement of Check.—The relations of a depositor and a bank are those of creditor and debtor, and the bank pays out funds of the depositor upon a forged endorsement of a check, at its peril, but the fact that funds are paid out upon a forged endorsement of a check will not give the drawer of the check a cause of action against the bank, unless the drawer suffers injury by the payment of the check to a person, other than his creditor, or in some other way.

4. Banks and Banking—Delivery of Check—Alteration.—Where a drawer executes and delivers a check, which is a completed instrument, and it is thereafter materially altered, by raising the amount for which it was drawn, without the assent of the drawer, it becomes void, as to the drawer, except to the extent of the sum for which it was drawn by him, although in the hands of a bona fide holder, in due course.

5. Bills and Notes—Liability of Drawer for Fraudulent Alterations—Negotiable Instruments Law.—The rule, that the drawer of a check must suffer the loss occasioned by a fraudulent alteration of it, if he had negligently drawn it, leaving blank spaces wherein words and figures could be inserted, without leaving any mark, which would excite the suspicions of a reasonably careful man, and some one had embraced the opportunity and inserted other words and figures, which materially altered the check, has been changed by the provisions of section 124, of the Negotiable Instrument Law, when applied to a check, which is a completed instrument at the time of its delivery.

6. Bills and Notes—Filling Blanks—Negotiable Instruments Law.—Sections 13 and 14, Negotiable Instrument Law, define the instances, in which holders and persons in possession of incompleted negotiable instruments may lawfully fill up the blank spaces in such instruments.

H. R. DYSARD for appellant.

THEOBALD & THEOBALD for appellees.

OPINION OF THE COURT BY JUDGE HURT—Reversing.

The appellees, Arden & Fraley, composed a partnership, engaged in the manufacturing of lumber, and recovered the judgment appealed from, in the Carter circuit court, against the appellant, Commercial Bank of Grayson, a banking corporation engaged in the general banking business, and organized under the laws of this state. The judgment was for six hundred and eighty dollars and seventy-five cents, with interest at six per centum per annum from the date of the bringing of the action. The appellees kept an account in the appellant, bank, during the year, 1914, to the credit of which, they deposited funds, from time to time, and against which they drew the checks of the partnership, payable to other persons, in the regular course of their business. One of their employes was Charles Fleming, and between the month of June and the end of the year, they paid to him various sums of money by checks drawn in the name of the partnership, upon appellant, bank, and payable to Fleming and signed by the partnership. By their petition, it was claimed that they drew seven checks during the year upon appellant, bank, payable to Fleming, which bore the following dates and were for the following amounts: July 31st, $7.75; August 4th, $5.00; August 20th, $5.00; September 21st, $18.00; October 7th, $7.50; November 21st, $12.50; and December 1st, $5.00; and that these checks were each fraudulently altered and changed by some one, to them unknown, and without their knowledge or consent, after they were drawn by them and delivered to the payee, so that each of the checks was raised as follows: The one dated July 31st, to $97.75; the one dated August 4th, to $95.00; the one dated August 20th, to $95.00; the one dated September 21st, to $98.00; the one dated October 7th, to $98.50; the one dated November 21st, to $98.50, and the one dated December 1st, to .$98.00; and that the appellant wrongfully paid these checks out of appellees' funds, when they were presented to it, in their altered and forged condition, without the payee, Fleming, ever having endorsed them himself, or by any person authorized by him to endorse them for him; that the checks and the endorsement of the payee thereon were all forgeries and did not authorize the appellant to pay same out of appellees' funds. It will thus be observed, if the truth of appellees' averments are conceded, that the checks, as raised, amounted to a total

sum of six hundred and eighty dollars and seventy-five cents, the amount of the judgment recovered, and six hundred and twenty dollars, in excess of the total amounts, for which the checks were drawn by the appellees.

The appellant denied that either of the checks were raised or altered, or that they were not endorsed by the payee, Fleming, and further plead, that in drawing the checks, appellees negligently prepared them, in such a way, as to invite their fraudulent alteration and to make same easy, and that, if altered, it had been so done, that a reasonably careful business man, exercising ordinary care, could not discover the forgery, by reason of the negligent manner in which they had been drawn; that appellees had, after the checks had been paid by appellant, ratified its action in making the payments; that in a settlement between appellees and Fleming, the appellees had received the benefit of the original amounts, for which the checks had been drawn. The answer was made a cross-petition against the Citizens Bank of Grayson, upon the endorsement of which, the appellant alleged, it had paid the checks and charged them to appellees' account. The affirmative matter in the answer and its amendments were traversed, and upon these issues the trial was had, which resulted as heretofore stated.

The appellant asks that the judgment be reversed for the following reasons:

(1) Because of the admission of incompetent testimony, which was prejudicial to appellant. (2) The errors of the court in instructing the jury. (3) The errors of the court in refusing instructions, which were offered.

The evidence contained no contradictions and proved that the facts of the controversy were these: The checks were drawn upon the usual printed forms, containing a blank space for the name of the payee, the amount of the check, and for what the check was drawn. The printed spaces designed for the amount of the checks, upon each check, were two in number, one wherein the amount was to be stated in figures, following the dollar mark, and the other following it wherein the amount was to be written in letters. The writing done upon the checks, in stating the name of the drawee, the amounts and date of the checks, and signature of the drawer, was done with a lead pencil, and in a sorry handwriting. Five of the checks were delivered to the payee by appellees, and two of them to his son, by his direction, for him. The five

checks, which the payee received in person, he delivered to his son, Claude Fleming, with directions to endorse his name thereon and to present same to the Second National Bank of Ashland. The two checks, which were delivered to Claude Fleming, by the payee's directions, were never seen, at any time, by the payee, and he gave no directions in regard to them. After the checks came into the hands of Claude Fleming, who seems to have had more education in the line, which enabled him to write, than that, which prompted him to be honest, he inserted words and figures, in the blank spaces, in some of the checks and changed words and figures in others of the checks, so as to raise the checks to the amounts heretofore mentioned. Then, without any written authority from his father, the payee of the checks, he wrote the name of his father across the back of the checks, as an endorser, and then wrote his own name underneath that of his father, as, also, an endorser. He presented the checks to the Second National Bank, of Ashland, which received them and paid to him the amounts to which he had raised the checks, respectively. The young man then accounted to his father for the original amount of the checks and kept the "raises" for himself, and for his part of the transaction, he is now languishing in the penitentiary. The Second National Bank, of Ashland, endorsed the checks to the Citizens Bank, of Grayson, which, in turn, endorsed them to appellant, bank, which paid them and charged them to the appellees' account. Each of the checks was presented to and paid by appellant, in a few days, after the date, upon which it was drawn. At the respective times, at which several of the checks were paid and charged to appellees' account, it resulted in overdrawing the account, but upon notice, the appellees would make a deposit to cover the check as raised. It does not appear that any of the checks, at the amounts at which they were drawn by appellees, would have resulted in an overdrawal of the account. On several occasions, the appellant notified the appellees and requested them to bring their books to the bank and to ascertain, if everything was correct. One of the appellees would come, but would not bring his books, if he had any, and on these occasions, the employes of the bank would present him with the checks of the partnership, which had been paid, but he says that he never discovered, that the checks had been raised, until after all of them had been

paid. The evidence is not satisfactory, that his attention was ever called to any of the altered checks, and when his attention was called to the books of the bank, it does not appear, that they would show to what individuals, checks had been given by the appellees. It is very apparent, that the appellees never knew, that any of the checks had been raised, until after the transactions had all been completed. The proof, however, shows, without contradiction, that in a settlement between appellees and Fleming, they were credited by the true amounts of the checks, and thus received the benefits of them to that extent. Certain of the checks were raised by inserting the figure, 9, between the first figure of the amount of the check, as written by appellees, and the dollar mark, and by writing the word, ninety, before the first word of the amount, as written by appellees, but certain others of the checks were raised by erasing the letters and figures, as written by appellees, and inserting other letters and figures in their places.

(a). The incompetent evidence complained of was the reading of the appellant's cross-petition against the Citizens Bank, of Grayson, as an endorser, wherein appellant sought to recover of it any amount, which might be adjudged in favor of appellees, on account of the payment of the altered checks. The issues between appellant and the Citizens Bank, of Grayson, had not been made up, and the Citizens Bank was not a party to the trial, and what was contained, in the cross-petition against it by appellant, did not shed any light upon the issues being tried, and hence should not have been permitted to be read upon the trial of the issues between appellant and appellees. The testimony of the officers of appellant, bank, to the effect that it intended to make claim against the banks, which had endorsed the checks, to recoup it, in the event, that a judgment went against it, which they were required to testify over the objection of the appellant, was, also, incompetent and should not have been admitted. This incompetent testimony, however, was not prejudicial, as will be hereafter shown.

(b). The court gave to the jury five separate instructions. The first one directed the jury, in substance, that if the checks were written and signed and delivered to the payee by the appellees for the small sums mentioned in the evidence, and threafter without their knowledge or consent or authority, the checks were altered, by the amounts, for which the checks were given, being raised,

and were paid by the appellant out of appellees' funds, without their knowledge or consent, to find for the appellees the amount of the checks, as raised. The second instruction advised the jury, that if the appellant paid the checks, in controversy, out of the funds of appellees on deposit in its bank, without the endorsement of the payee of the checks, to find for appellees. The other instructions set out and advised the jury of certain abstract principles of the commercial law, which are applicable, in the proper states of case, but have very little connection with the principles applicable to the instant case. The third instruction seems to have been based upon section 19, of the Negotiable Instrument Law, which requires one endorsing a negotiable instrument, by agent, to have given such agent authority, in writing, to make the endorsement of his name, before he is bound by the action of the agent. The section, *supra,* has been construed as having the effect of requiring the authority of an agent to sign the name of one to a negotiable note to be in writing, before the party is bound, in Finley v. Smith, Banking Commissioner, 165 Ky. 445, and there does not seem to be any reason why the statute does not, also, include the endorser of a note or check, as its language is: "The signature of any party may be made by an agent, duly authorized in writing." In the instant case, however, there is no controversy between the appellant and the payee of the check, the endorsement of whose name upon the check was made by an agent, without written authority to do so. The principle of this statute would be applicable, doubtless, if it was sought to make the original payee of the checks liable as an endorser, which is not being attempted to be done. It is apparent, furthermore, that under the facts of this case, the appellant would be liable to appellee to the extent that the checks were raised, without their authority or assent, whether the name of the original payee of the checks was endorsed upon the checks by himself or by his agent, and the fact that the agent was without written authority would not increase or diminish appellant's liability. In a state of case, where the drawer of a check would not suffer any injury, by its payment by the bank, upon which it was drawn, the mere fact that the check was endorsed by the original payee, by agent, without written authority, would not give the drawer a right of action. The other abstract principle of which the jury was advised, in the instructions given, to the effect, that

money paid out by a bank by reason of a forged endorsement, is not a payment out of the drawer's funds in the bank, but a payment out of the bank's own funds, is, also, correct and applicable, where the endorsment of the payee of a check is forged, and the drawer's purpose, in giving the check, is thus caused to fail of its purpose, and results in the payment of his funds to some one, other than his creditor, and to whom the depositor did not direct payment to be made. The relations between a bank and a depositor are that of debtor and creditor, and hence the bank must know, that it carries out the wish of the depositor, in paying out his funds, and it pays, the funds of the depositor out upon a check to some one not authorized by the check to receive it, at its peril. 5 R. C. L. 566, 567; Rice & Givens v. Citizens' National Bank, 21 R. 346; Henderson Trust Co. v. Ragan & Tibbs, 21 R. 601; Champion Ice Mfg. & Cold Storage Company v. American Bond & Trust Co., 115 Ky. 863. In this case, the wrongful paying out of the depositor's funds did not arise from any forged endorsement or unauthorized endorsement, alone, but it arose from the fraudulent alteration of the checks, without the assent of the drawers, after they were signed by them and delivered to the payee, and the liability of the bank would have been the same, if the agent of the payee had had written authority from him to endorse them. It is conceded, that the raising of the checks were material alterations of them. Kentucky Statutes, article VIII, chapter 90b. It is, also, shown without contradiction, that appellees signed and delivered to the payee the checks, calling for the payment of the small sums, heretofore mentioned, and that without the assent, knowledge or authority of the drawers, the checks were fraudulently altered and raised to the amounts, which they appeared to call for payment of, when they were paid by appellant. It is, also, conceded, that the appellant became the holder of the checks in due course. Hence, section 124, chapter 90b, Kentucky Statutes, or as it is termed the Negotiable Instrument Law, seems to fully define the rights of the parties to this suit. The statute is as follows:

"Where a negotiable instrument is materially altered without the assent of all parties liable thereon, it is avoided, except as against a party, who has himself made, authorized or assented to the alteration and subsequent endorsers. But when an instrument has been

materially altered, and is in the hands of a holder in due course, not a party to the alteration, he may enforce payment thereof according to its original tenor.''

Under the plain terms of this statute, the checks were made void by the material alterations made in them, except to the extent of the amounts for which they were drawn, in so far as they create any liability upon the appellees, and the payment of the checks by appellant, to the extent, that payments, were made, in excess, of the amounts for which they were drawn, was a conversion of appellees' funds to purposes not authorized by them. Hence, of the instructions given by the court, the first instruction was the only one which should have been given, and it should have been qualified, so that the recovery should have been only to the extent that the checks were ''raised.''

The appellant offered four instructions, in writing, which were rejected by the court. The first one was a peremptory direction for a directed verdict for appellant, and was properly refused.

The second instruction offered by appellant was a direction to the jury to find for it such sums, as went to make up the checks, as raised, as the evidence proved the appellees had received the benefit of. As before stated, the uncontradicted evidence proved, that appellees were credited by Fleming in a settlement with him in the amounts for which the checks were drawn, and to that extent the appellees could not and did not suffer any injury from the raising of the checks nor from their payment upon endorsement by Fleming, made by agent without written authority, and to permit appellees to recover those amounts was a mere taking of appellant's property and bestowing it upon appellees without any reason. The court should have peremptorily instructed the jury that appellant was not liable to the appellees for the amounts for which the checks were originally drawn.

The third and fourth instructions offered by appellant together, substantially, advised the jury to find for appellees six hundred and ten dollars and fifty cents, unless the appellees negligently drew the checks, in such a way, as to leave blank spaces on the face of them, which could be filled in, by the insertion of words and figures, without exciting the suspicions of a reasonably careful man, and the checks were raised by such insertions, in which event the jury should find for appellant, or if the

checks were raised and the appellees had a reasonable opportunity to discover the forgery, and negligently failed to do so, and because of such negligence the appellant suffered the loss, that the appellees were estopped from recovering, and the jury should find for appellant.

The latter clause of the above, if the law, puts upon the drawer of a check the duty of diligently investigating and seeking to find out, if any one had altered a check drawn by him, without any reason for apprehending, that such had been done, which could not be esteemed to be a reasonable requirement. There was not any evidence to the effect, that anything occurred before the checks were paid by the bank, which could have caused the drawers to apprehend the commission of a forgery. It was the bank's duty to know the genuineness of the endorsements and not the duty of the drawers. The checks were paid by the appellant before the appellee had any opportunity to see them, and no ground of estoppel could exist, unless the drawers of the check did or said something to induce and cause the appellant to pay them, when they would not have otherwise done so.

With reference to the instruction offered, which denied recovery by appellees, if they so negligently drew the checks, that blank spaces were left, in which words and figures could be inserted, which would alter them materially, and then when so done, a reasonably careful business man would not discover the forgery, many adjudications of this court are relied upon, to justify the contention, that it was reversible error for the court to refuse the instruction. An examination of these cases, however, develops the fact, that nearly all of them were decisions, in cases, which did not involve the fraudulent alteration of a completed negotiable instrument, but were cases wherein the implied authority of a holder of an incompleted negotiable instrument, to fill in the blank spaces with the proper words to make a completed instrument, was in question. Chiefly, they were opinions declaring the common law to be what has since been substantially enacted into statutory law, by sections 13 and 14, of the Negotiable Instrument Law. Section 13, *supra*, provides, that when a negotiable instrument is expressed to be payable at a fixed period after date, and is issued without a date, or where the acceptance of an instrument payable at a fixed period, after sight, is not dated, any holder may insert the true date of the acceptance or execution and it will be payable accordingly. Section 14,

*supra,* with relation to such blanks, as the person in possession of it, has authority to fill, after the delivery of the instrument, is a declaration, substantially, of the various opinions of this court upon the subject, and is as follows:

"Blanks how filled. Where the instrument is wanting in any material particular, the person in possession thereof has *prima facie* authority to complete it by filling up the spaces therein. And a signature on a blank paper delivered by the person making the signature, in order that the paper may be converted into a negotiable instrument, operates as a *prima facie* authority to fill it up as such for any amount. In order, however, that any such instrument, when complete, may be enforced against any person, who becomes a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within reasonable time. But, if any such instrument after completion is negotiable to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given, and within a reasonable time."

In Diamond Distilleries Co. v. Gott, 137 Ky. 585, this court, construing the above section of the statute, with sections 124 and 125, *supra,* in reference to the authority of a holder, after the delivery of a negotiable note, which obligates the maker to pay to the order of another, at an expressed period after date, a certain sum of money—which specifications were followed by the word "at," and it was followed by a blank space and then the words "value received" before the signature of the maker—to fill the blank spaces by writing in a place of payment, it was said:

"The foregoing provisions of the statute are but restatements of the law with respect to negotiable instruments, as it has long been recognized by the courts of this state. Manifestly, a note executed and delivered by the maker in the form originally presented by the one under consideration is not upon its face a completed instrument. When one executes and puts in the hands of another a note provided with a blank line or space, apparently intended to be filled with the name of a bank or other place of payment, any holder, in due course, of the note has *prima facie* authority to fill such blank; and especially would such authority be implied where the blank line or space immediately follows a word, which

unmistakably indicates that it is to be filled with the place of payment."

However, in Woolfork v. Bank of America, 10 Bush 504, this court, citing Chitty on Bills, 100, and 2 Parsons on Contracts, 580, said:

"If the bill is complete, any alteration in a material part, without the consent or authority of the parties to it, renders it invalid in the hands of an innocent holder, as well as one who takes it with knowledge of the fraud."

With reference to the liability of a maker of a negotiable instrument, when same is a completed instrument before delivery, and where it has thereafter been fraudulently altered in a material part, there has been a wide diversity of opinion, in the different jurisdictions, as to what effect, the negligence of the maker, in so making it, that it is easily susceptible of alteration, will have upon his liability, when it has been fraudulently altered and is in the hands of an innocent holder. One line of cases have held, that if a maker of a negotiable instrument, by a careless execution of the paper, leaves a vacant space in the face of the paper, so that another, by the insertion of words or figures in these spaces, may, materially, alter it, by changing the amount, or the time or the place of the payment, without leaving anything upon it to excite the suspicions of a reasonably careful man, and some one takes advantage of the opportunity and so alters it, that the maker will be liable upon it to a *bona fide* holder of it, without notice of the alteration, to the full amount to which it has been altered. Among the jurisdictions adhering to the above view has been this. In Blakey v. Johnson, 13 Bush 205, and Hacket v. First National Bank, 114 Ky. 195, this doctrine was announced, and it was referred to in Newell v. Bank, 13 R. 775, and Bank v. Haldman, 109 Ky. 222, but in each of those cases, the alterations were made in a promissory note and by some one of the parties to the note and to whom the note was in a way entrusted by the maker. Another line of cases, and by a larger number of jurisdictions, it has been held, that where a negotiable instrument has been signed and delivered as a completed instrument, and without the assent of the maker, the instrument has been altered by the insertion of words or figures in the blank spaces left in the instrument, and although done in such a manner, as to leave no mark or indication of the alteration, the instrument is avoided, although it is held by a *bona fide* holder for value. 5 R. C. L. 1036. The chief

reason ordinarily advanced for this rule is, that negligence in the making of a negotiable instrument could not be considered the cause of what would require the criminal act of another to perform. The decisions, heretofore cited, as having been rendered by this court, in support of the contrary doctrine, were all before the enactment of the Negotiable Instrument Law, in this state, which, by the provisions of section 124, *supra,* seems to have changed the former rule in this jurisdiction, as the provisions of the section clearly avoids a completed negotiable instrument, as to the parties to it, who do not assent to the alteration, but makes the liability of its holder, who has not assented to the alteration, the same but no greater than it was, before the alteration. The checks in controversy, in the instant case, were all completed instruments before they were delivered. The blank spaces in them were all filled by appropriate words and figures, although in some of the checks the entire spaces for words and figures were not filled up. It could not be inferred in any way from the face of the check, that any one was authorized to either add to or take away from the letters and figures there written. Hence, the court was not in error in rejecting the instructions offered by the appellant. There being no controversy, as to the facts, in the case, and no controversy, as to the fact, that the amount to which the checks were raised was six hundred and twenty dollars, in excess, of the total sums for which the checks were drawn, the court should have instructed the jury as, heretofore, directed, in place of the instructions given.

For the reason, that the court erred, in adjudging a recovery of the entire amount of the checks as raised, instead of the excess over the amounts for which the checks were drawn, the judgment is reversed, and the cause remanded, but as it is apparent that no other verdict or judgment can be rendered upon the facts of the case, the court is directed to set aside the judgment, and in its stead, to render a judgment for appellees for six hundred and twenty dollars, with interest as in the former judgment.