## Baskett v. Ohio Valley Banking & Trust Company.

(Decided March 26, 1926.)

### Appeal from Henderson Circuit Court.

1. Bills and Notes—Note Given for Stock Held Delivered when Stock Certificates were Issued and Payee Received Proceeds (Ky. Stats., Section 3720b-16).—Note given in payment for stock held delivered, within meaning of Ky. Stats., section 3720b-16, where stock certificate was signed and held subject to maker's order, note was discounted, and proceeds placed to credit of payee, which never repudiated transaction.

2. Bills and Notes.—Defense of lack of consideration in original execution of note is not available against holder in due course.

3. Bills and Notes—Holder in Due Course can Enforce Altered Note Against Maker According to Original Tenor, where Not a Party to Alteration (Ky. Stats., Section 3720b-124).—Holder in due course of note given in payment for stock may enforce it against maker, according to its original tenor, though it was altered after execution by addition of signature of president of payee, where he was not party to alteration, in view of Ky. Stats., section 3720b-124.

4. Bills and Notes—Maker Executing Renewal Notes Held Estopped to Set up Lack of Authority of President of Payee to Indorse Note

—"Precluded"—"Estoppel" (Ky. Stats., Sections 3720b-19, 3720b-23.)
—Maker held estopped to set up lack of authority of president of payee to indorse note given in payment of stock as· against discounting bank, in view of Ky. Stats., sections 3720b-19, 3720b-23, providing that note with forged signature is inoperative unless party against whom note is sought to be enforced is "precluded" from setting up forgery where he knew note was to be discounted and executed renewal notes without complaint as to such indorsement, and bank could not take effective steps against payee; "precluded" being synonymous with "estoppel."

5.   Corporations—Payee of Note Cannot Rely on Lack of Agent's Authority to Indorse Until Consideration is Returned.—Payee, when sued on note indorsed by its president without authority, cannot rely on such want of authority till it returned consideration received.

6.   Corporations.—Payee of note ratified unauthorized act of president in indorsing it by retaining consideration.

VANCE & HEILBRONNER for appellant.

YEAMAN, PENTECOST & YEAMAN for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

The facts of this case are these: On December 16, 1922, the appellant executed his negotiable note in the sum of $10,000.00 due six months thereafter, payable to the Green River Jockey Club or order, and delivered it to his brother, Lee Baskett, who was the president of the jockey club and its active manager. The note was given in payment. for 1,100 shares of the capital stock of the jockey club, of which the appellee was the registrar, and the stock book of which it had in its control and custody. Thereafter, Lee Baskett signed his name on the note under that of the appellant, endorsed it on the back with the name of the jockey club by himself as president and discounted it with the appellee, which placed to the credit of the jockey club the proceeds amounting to $10,000.00, these proceeds serving to discharge in part an overdraft the jockey club had with the appellee at that time. On June 16, 1923, when this note fell due, the appellant went to the bank and signed a renewal for $10,300.00, the additional $300.00 being the accrued interest on the original note.

Thereafter Lee Baskett signed this renewal note and endorsed it as he had the original one, and then gave it to the appellee, which thereupon surrendered the orig-

inal note to the appellant. On December 16, 1923, this renewal note was again renewed in the same fashion and was also surrendered to the appellant.

When the original note was executed a certificate for 1,100 shares of the capital stock of the jockey club was duly filled out by the employes of the appellee, signed by the proper officers of the jockey club and stamped with the certification of the appellee as registrar. The certificate was then placed in an envelope awaiting the call of the appellant and subject to his order, but it was never actually turned over to him at any time prior to the institution of this suit.

The appellant did not know that the original note had also been signed by his brother until it was surrendered to him after the first renewal note had been executed. But he then made no complaint about his brother having done so and executed the second renewal note without any mention of it. Although Lee Baskett had never been formally authorized by the jockey club to discount its notes, he was the active man in charge of its affairs and conducted practically all of its business for it. At the time of the sale of the jockey club stock to the appellant, Lee Baskett agreed with him to repurchase the stock whenever the appellant called upon him to do so, but as the appellee knew nothing about this agreement at the time it discounted the note it is conceded that such agreement is no defense to the appellee's claim in this action.

Appellant when he signed the original note and delivered it to his brother knew and contemplated that it would be negotiated with and transferred to some bank, but he did not know to what bank it had been transferred until he received notice from the appellee upon the maturity of the note. Up to the filing of this action appellant never questioned the endorsement of the jockey club or contended that it had been made in an unauthorized manner. At the time the appellee discounted the original note and at the times it accepted the renewal notes, it did so in ignorance of the fact that Lee Baskett had added his name to the notes without the full concurrence and assent of the appellant and without notice of any restriction on Lee Baskett's right to sell the stock of the jockey club on any terms as to credit he saw fit. Indeed, the evidence fails to disclose any such restrictions. It knew that the jockey club had held Lee Baskett out for considerable time prior to these transactions as the active manager of its affairs and business. The evidence estab-

lishes that it was a *bona fide* holder of the note and its renewals without notice of any of the alleged defects with which appellant seeks to burden it. The last renewal note not being paid on its maturity, appellee brought this suit against appellant to coerce its payment. The case was submitted to the trial court without the intervention of a jury and from its judgment in favor of the appellee for the full amount of the note, interest and costs, appellant brings this appeal.

Appellant first insists that he was entitled to a judgment in his favor, because there was no evidence that the note had ever been accepted by the jockey club in payment of his subscription for its stock, and hence there had been no delivery of the note. He relies on Kentucky Statutes, section 3720b-16, a part of our negotiable instrument law, which says that until there is a delivery of a negotiable instrument for the purpose of giving effect thereto such instrument is incomplete and revocable. But in this appellant is mistaken. His brother was in the active charge of the affairs of the jockey club and was engaged in selling its stock. On receipt of appellant's note, a certificate for his subscription was made out and signed and held subject to his order. The note was discounted as appellant knew would be done and the proceeds placed to the credit of the jockey club, which thus got the benefit of the payment. The jockey club has never repudiated the transaction. It is plain, therefore, that there was a delivery of the note and an acceptance of it by the jockey club. Further, the section of the negotiable instrument law cited and relied upon, *supra,* also provides that where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him will be conclusively presumed. As the appellee is a holder in due course of this note, under the terms of the statute, a valid delivery of it so as to charge appellant will be conclusively presumed. Brannon's Negotiable Instrument Law, 3rd ed., p. 57, et seq. Appellee being a holder in due course the defense of lack of consideration in the original execution of the note must likewise fail.

Appellant next contends that the note was altered by the addition of the signature of Lee Baskett to it and that therefore there can be no recovery upon it because of Kentucky Statutes, section 3720b-124, another part of our Negotiable Instrument Act. While this section provides that if a negotiable instrument is materially altered

without the assent of all parties liable thereon, it is avoided; it also provides that when an instrument has been materially altered and is in the hands of the holder in due course who is not a party to the alteration, he may enforce payment thereof according to its original tenor. As the appellee, a holder in due course, was no party to the original alteration, even if it be conceded to be material, it can certainly enforce the note against the appellant according to its original tenor. See also Caudill v. First National Bank of Prestonsburg, 211 Ky. 126, 277 S.W. 310. In answer to this, however, appellant says that the appellee is not a holder in due course because the endorsement of the jockey club was made by Lee Baskett without written authority to do so, and cities from our Negotiable Instrument Act, Kentucky Statutes, section 3720b-19 and section 3720b-23. The former section provides that the signature of any party may be made by an agent duly authorized in writing and the latter section provides that where a signature is made without authority it is wholly inoperative and no right to retain the instrument or to give a discharge therefor or to enforce payment thereof against any party thereto can be acquired thereby. But this latter section also provides that if the party against whom it is sought to enforce any such right is precluded from setting up a forgery or want of authority to make the negotiation the holder may then enforce that right. In Olsgard v. Lemke, 32 N. D. 551, 156 N. W. 102, it was held that the word "precluded" in section 23 of the Uniform Negotiable Instrument Act, which is the same as section 3720b-23 of our statutes, above noted, is used as synonymous with "estoppel." See also Brannon's Negotiable Instrument Law, 3rd ed., p. 80, et seq. Conceding without deciding that the endorsement of Lee Baskett required written authority from the jockey club to give it effect, yet had the jockey club been sued on its endorsement it clearly could not have relied on any want of authority in Lee Baskett to endorse the note until it returned the consideration it had received. By retaining that consideration it ratified the act of its president. Neither can appellant complain of Lee Baskett's want of such written authority. He knew the note was to be discounted. He executed it for that very purpose. When he signed the renewal one and the original note was returned to him, he made no complaint about the endorsement. Neither did he do so when he signed the second renewal note. After that, the jockey

club was adjudged a bankrupt, but appellant, by his acts, had lulled the appellee into a sense of security until it was too late for it to take any effective steps against the jockey club to protect itself in connection with the endorsement not made pursuant to the method set out in the statute, of that section be applicable. He is plainly estopped to set up his brother's lack of written authority to endorse the notes. Appellant comes squarely within the latter part of section 3720b-23 of our statutes and his contention in this regard is without merit.

It results, therefore, that as none of the defenses presented by appellant serve to relieve him from liability on this note, the judgment of the lower court against him is correct and must be affirmed.