## Citizens Bank of Morehead v. Nickell et al.

March 17, 1939.

D. B. Caudill, Judge.

W. B. WHITE for appellant.

W. C. HAMILTON and E. HOGGE for appellees.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

On July 18, 1928, appellees, G. C. Nickell and Lindsay Caudill, as sureties for V. Hunt, executed and delivered to the Morehead State Bank a promissory note payable four months after date. Later in the same month, after the execution of the note, that bank was taken over by the State Banking Commissioner. The appellant, Citizens Bank of Morehead, was thereafter organized and on September 25, 1928 the Banking Com-

missioner sold and transferred the assets of the Morehead State Bank to appellant. By this contract of sale, appellant assumed all liabilities of the former bank and agreed to use due diligence in collecting the assets turned over to it and agreed to pay to the former bank any profit realized from the liquidation.

ppellant filed suit against Hunt and appellees on the note executed by them, alleging that by the note appellees and Hunt agreed to pay the Morehead State Bank $3,600 four months after date. The manner in which the note came into the hands of appellant was alleged and it was further alleged that it was a holder in due course.

Appellees do not deny the execution of the note, but claim that the note as presented to them by Hunt was made out for $600 and that the amount thereof was raised to $3,600 by addition of the words "three thousand" before the words "six hundred" and by the addition of the figure "3" before the figures "600" appearing in the upper left hand corner of the note and that, by reason of this fraudulent alteration, they were discharged from liability. Default judgment was rendered against Hunt.

On trial before a jury, the court instructed the jury to find for appellant unless they believed from the evidence that at the time the note was signed by the appellees, the amount thereof was fixed at $600, and that after it was signed by them it was altered by the amount being increased to $3,600. The jury returned a verdict in favor of appellees, and from a judgment entered on that verdict this appeal is prosecuted.

Appellant contends it was entitled to a directed verdict because the evidence shows as a matter of law that appellees were guilty of negligence in signing a note in the manner claimed by them, since room was left for alteration of the note by insertion of the words and figures claimed by appellees to have been inserted without exciting any suspicion. It insists that even if it were not entitled to a directed verdict, the trial court should have given an instruction offered by it on the question of appellees' negligence in signing a note drawn in this manner. Cited in support of this contention are Hackett v. First National Bank of Louisville, 114 Ky. 193, 70 S W. 664, 24 Ky. Law Rep. 1002; Bank of Commerce v. Haldeman, 109 Ky. 222, 58 S. W. 587, 22 Ky. Law

Rep. 717; and Blakey v. Johnson, 13 Bush 197, 26 Am. Rep. 254.

The principle announced in those cases is that when the maker of a note has, by careless execution thereof, left room for alteration to be made either by insertion or erasure without exciting the suspicions of a careful man, he will be liable upon it to a bona fide holder where the opportunity which he has thereby afforded has been embraced and the note filled up with a larger amount than that which it bore when he signed it.

We find, however, that in Commercial Bank v. Arden & Fraley, 177 Ky. 520, 197 S. W. 951, L. R. A. 1918B, 320, the court pointed out that those cases were decided before the enactment of the Negotiable Instruments Law in this State and that by that law, section 3720b-124, Kentucky Statutes, a completed negotiable instrument which has been materially altered is voided as to any party who does not assent to the alteration. An examination of the authorities on this question reveals that the decided weight of authority in other jurisdictions is in accord with this rule. 10 C. J. S., Bills & Notes, page 1065, section 486; Brannon on Negotiable Instruments, section 1124; Glasscock v. First National Bank, 114 Tex. 207, 266 S. W. 393, 36 A. L. R. 320; Arnold v. Wood, 127 Ark. 234, 191 S. W. 960. The principle underlying these cases denying the maker's liability on an instrument which was complete when he signed it, though it contained a blank space which made the alteration easy, is that such action on the maker's part, though it may be said to be negligence, is not the proximate cause of loss by an innocent purchaser, but that the crime of the forger, or one who alters the note, is the proximate cause of the loss; that forgery and consequent loss cannot reasonably be said to be the natural and probable consequence of signing a note thus inartificially drawn. Baskett v. Ohio Valley Banking & Trust Company, 214 Ky. 41, 281 S. W. 1022, does not conflict with the rule announced in Commercial Bank v. Arden & Fraley, supra. It is there held that a holder in due course may enforce the note according to its original tenor where there has been a material alteration, nor is Correll et al. v. People's Bank of Science Hill, 223 Ky. 115, 3 S. W. (2d) 170, in conflict with the rule announced in Commercial Bank v. Arden & Fraley, supra, for it cites that case as authority and recognizes the rule that where a note is materially altered without

the knowledge or consent of the makers there can be no recovery thereon. We see no reason to depart from the decision in Commercial Bank v. Arden & Fraley, supra, and are therefore of the opinion that the trial court committed no error in failing to give a directed verdict for appellant and in refusing to give the instruction offered by appellant on the question of appellees' negligence in signing the note in the manner claimed by them.

As to appellant's contention that the verdict is flagrantly against the evidence, we find that the only evidence in the record for appellees is their own testimony, from recollection only, given on October 13, 1937, as to these transactions occurring in July, 1928, more than nine years before the trial. The note in controversy is made out on one of the forms of the Morehead State Bank, which is the usual and ordinary form of such promissory notes. According to appellees' testimony, the words "six hundred" were on the right hand side of the line just before the word "dollars" and the figures "600" in the upper left hand corner were written with amply room left for the insertion of the figure "3" between the dollar mark and the figures "600." The letter "s" in the word "six" is a small "s." If we accept appellees' testimony on this point, a matter of recollection with them as to a transaction occurring nine years before they testified, we must necessarily assume that Hunt, the principal in the note, at the time he filled out the note, had deliberately planned an alteration thereof and had drawn it up in this manner with the express purpose of altering the note by raising it to $3,600 after he obtained appellees' signatures thereto. The note is in his handwriting and an inspection thereof reveals that the entire note was written with the same ink; appellant, Nickell, admits this in his testimony. Mr. Hunt wrote a good hand and it is apparent that he knew the correct and usual manner of filling in a note. It is readily seen that if appellees' theory is correct, he deliberately planned this forgery before presenting the note to them for their signatures. Not only is this true if appellees' theory is correct, but we must believe that either Hunt or Paxton Davis, the cashier of the old bank, was guilty of another forgery. Hunt and Davis both say that the old bank held Hunt's note for $2,000 with appellees as sureties, and that he also had an overdraft at the bank and some outstanding checks; that

the purpose of the note in controversy was to pay off that note and clear up the overdraft and checks. They state that Hunt secured appellees' signatures on the note in blank and brought it to the bank; that Davis figured out the amount of the $2,000 note and interest, added thereto the overdraft and outstanding checks and found that $3,600 would be necessary to clear up the entire amount; that after doing so he took the note to Hunt's store and told him the amount necessary was $3,600, and that Hunt there filled in the amount of the note. Davis testified from the records of the Morehead State Bank and read into evidence from the books an entry of March 3, 1928, showing note No. 2565 in the sum of $2,000 executed to the bank by Hunt with appellees as surety thereon.

Appellees denied that they ever executed such a note. Davis testifies that he himself handled the $2,000 note, that he was acquainted with the signatures of appellees and that they did sign it. He states that the $3,600 proceeds of the note in controversy were credited to Hunt's account and the $2,000 note and these other items charged against it; that the $2,000 note was delivered to Hunt and remained with his papers at the bank. Hunt did not know what became of the note. He said it was left at the bank with his papers. Appellees lay great stress on the fact that this note was not produced, but we do not attach any great weight to its nonproduction. We think it would be rather singular that Hunt would have preserved for nine years a cancelled and paid off note, especially where the bank to whom it had been paid had gone out of existence.

If appellees' theory is correct, Hunt was guilty of forging the $2,000 note and the testimony of Davis with reference to appellees' signatures thereto is necessarily false. We find no evidence in this record by which we feel that the jury was justified in arriving at the conclusion that Hunt was guilty of two forgeries and Davis of aiding and abetting him in the perpetration thereof. No evidence is offered to impeach the character of either of these men, whose testimony is supported by record evidence, and we cannot escape the conclusion that appellees' recollection of the manner in which the note was executed was faulty and that their testimony under the circumstances appearing here has little value. They were vitally interested witnesses, while the record shows no apparent motive on the part of Davis to

fasten an unjust liability on appellees. Hunt's testimony has every earmark of candor. It might be said his testimony was colored by his desire to prevent prosecution for forgery, but when taken in connection with Davis' testimony, backed up by the bank records, it is so convincing as to leave little, if any, doubt that appellees' recollection of the manner in which the note was executed had become very dim in the nine years that had elapsed between the execution of the note and the day of trial.

We are of the opinion that the verdict is so flagrantly against the evidence as to indicate that it was the result of passion and prejudice on the part of the jury and, for this reason, the judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent with this opinion.