**RICHFIELD NAT. BANK OF RICHFIELD, MINN., v. AMERICAN SURETY CO. OF NEW YORK et al.**

No. 8496.

Circuit Court of Appeals, Eighth Circuit.
Feb. 18, 1930.

388

Sigurd Ueland, of Minneapolis, Minn. (A. Ueland, of Minneapolis, Minn., on the brief), for appellant.

Charles S. Kidder, of St. Paul, Minn. (Charles N. Orr and Herman F. Stark, both of St. Paul, Minn., on the brief), for appellees.

Before STONE, Circuit Judge, and MUNGER and REEVES, District Judges.

REEVES, District Judge.

Under the doctrine of subrogation, the appellee American Surety Company of New York was granted a decree against the appellant for the recovery of a specified sum of money.

The school district, appearing as one of the appellees, had designated the appellant as a depository for a part of its funds. The said surety had become bound under a contract of suretyship for the treasurer of said school district. The treasurer defaulted and absconded. The surety duly paid the full amount of his defalcations and sought reimbursement from the appellant upon the grounds that it had wrongfully aided such defalcations or had cashed checks of the defaulter with knowledge that the sums thus paid would be misapplied.

A statute of Minnesota (Gen. St. 1923, § 2836) provided for the selection of depositories for school districts at the discretion of the proper officials. In accordance with this law, said school district had selected the appellant as one of its depositories. Upon selecting such depository, the officers of the district were empowered to "require the treasurer to deposit all or any part of the school district's money in such bank or banks." The statute required that such designation should be in writing and "shall set forth all the terms and conditions upon which the deposits are made." Though the appellant was designated as a depository and received deposits in accordance with said designation, it does not appear that it was formally designated in writing.

The officials of the district had followed a custom of combining in one instrument the warrants of the district with the check of the treasurer. By this arrangement all funds of the district were disbursed only upon such instrument when signed by three officials of the district, namely the chairman, the clerk and the treasurer. When the appellant became a depository of said district, it was advised in writing that no funds should be disbursed except upon warrant or check bearing the signature of the three officials.

Contrary to these instructions, the bank from time to time paid out funds of the district upon checks signed by the treasurer alone. Ordinarily upon presenting such checks the treasurer received in return a cashier's check of equal amount. The latter checks were made payable to the treasurer as such.

There is no controversy but that the treasurer misappropriated said funds and on the moment of detection absconded. It is the contention of the appellant that there was no evidence of participation or negligence of the appellant with respect to the wrongful acts of the treasurer. Even if so, it is asserted that the laches of the district would bar recovery. Moreover, the right of the surety to become subrogated to the rights of the school district is challenged.

Other facts, if they may become pertinent, will be noted and discussed in the course of this opinion.

1. Even though the appellant was not designated in writing, as required by law, yet it was orally designated as a depository and gave bond as such. It received the moneys of the district and was instructed as to the manner in which disbursement should be made and undertook to act as a depository. It cannot now be heard to complain that it was not designated in the manner prescribed by law. Chicago & A. Ry. Co. v. New York, L. E. & W. R. Co. (C. C.) 24 F. 516; 10 R. C. L. § 22, P. 694.

2. Appellant became a depository of a public fund and understood the conditions of such deposit. In the absence of a statute to the contrary, the officers of the district had a right to prescribe the manner in which the fund should be handled. In fact, the statute, providing for school district depositories, specified that in the designation of such depository it shall be set forth "all the terms and conditions upon which the deposits are made." Statutes of Minnesota (Gen. St. 1923) § 2836.

All the parties, including the treasurer, acquiesced in the terms and conditions of the deposit. This amounted to an agreement that no disbursement should be made or no checks paid except upon the signature of the three officials of the district. Such terms and conditions were lawful and logical, and the bank became bound thereby.

"As a deposit is a matter of contract between depositor and bank, the depositor may stipulate at the time of deposit as to how or by whom * * * the money may be drawn out." 3 R. C. L. § 170, p. 541.

3. Appellant is not in a position to contend that the instructions given by the school board were unauthorized. Immediately upon its becoming a depository, the clerk of the district, in writing, advised appellant of the terms of the deposit. Appellant then had a right to and should have presumed that such instructions were regularly authorized. Webb v. School District, 83 Minn. 111, 85 N. W. 932. Thereafter the records disclose that the board regularly approved the action of the clerk. The instructions were accepted at the time as regularly given, and the appellant has at no time until now challenged the authority of such instructions. The fact is that the deposit was received and accepted upon the terms set forth in the instructions given by the clerk.

4. The evidence not only shows conclusively that the money was paid out contrary to the express instructions given by the officials who designated it as a depository, but yields the inference that the officials of the bank had knowledge of the misapplication of said funds by the treasurer. In the course of the transaction, the board of directors of the appellant, according to the evidence, had occasion to discuss the treasurer of the district "at the meetings several times." The cashier of the bank, upon inquiry as to how much he had seen of the treasurer, declined to answer, saying, "I might reserve my opinion on that."

In explanation as to why the checks were paid without proper signatures, the cashier of the bank testified: "Mr. Mitchell (the treasurer) came in with the checks payable to him for deposit and I figured it was equally the same whether he took the draft back again in the same form—he was keeping the account divided between the two banks and he could cash these checks at some place else, just as well as he could at my place, if he wanted to take the money on them. He could cash this check here, as far as I knew at the time, in any other bank and get it all in currency, I presume. There is nothing to stop him. * * * The only reason we wrote out the drafts was that we presumed they were being taken down to the other account. And these small ones here, I can't satisfactorily explain them except the one reason I probably felt if I mentioned it to Mr. Mitchell, he might think I was balking on him."

This, with other testimony, indicates that the officials of the appellant suspected irregularities on the part of the treasurer, and, when considered in connection with the presentation of checks irregularly drawn, the trial court was fully justified in the inference that the appellant had knowledge of the misapplication of funds by the treasurer.

5. Appellant relies on National Bank v. Insurance Co., 104 U. S. 54, loc. cit. 63, 26 L. Ed. 693. This case justified a presump-

tion of proper conduct on the part of a trustee. However, such presumption can only be indulged when checks are drawn in proper form.

The case of the American Surety Co. v. Citizens' National Bank (C. C. A.) 294 F. 609, 612, does not support the appellant. In this case, the defaulting treasurer "had a right in his official capacity to check out the funds in the three depositaries, and * * * they were all ordinary transactions, carried on in the usual way. * * * Under the circumstances disclosed there was nothing to cast suspicion on the transactions and appellee was not bound to assume that Davisson was a wrongdoer, and on that assumption refuse to go on. Until there be reasonable ground to think otherwise, a presumption prevails that one acts honestly and keeps within the requirements of the law." United States v. Detroit Lumber Co., 200 U. S. 321, loc. cit. 332, 26 S. Ct. 282, 50 L. Ed. 499.

In the case at bar, the appellant not only knew that funds were being drawn contrary to its express instructions, but one of its active officials had occasion to suspect irregular conduct of the treasurer, but "felt if I mentioned it to Mr. Mitchell he might think I was balking on him."

■ 6. Appellant denies the right of subrogation in this case.

"It is the generally accepted rule that a surety who has paid the debt of his principal is subrogated to all the rights, remedies * * * held * * * by the creditor against the person or property * * * of the principal debtor, with the same right to resort to them that the creditor would have had if the surety had not paid the debt." 25 R. C. L. § 61, p. 1378; National Surety Co. v. Massachusetts Bonding & Insurance Co. (C. C. A.) 19 F.(2d) 448.

The appellee surety company paid the amount of the defalcations of its principal. The school district not only acknowledges such payment, but by its pleading seeks to cede to the surety all of its rights. That the school district would have had the right to proceed against the bank cannot be questioned. And where, as in this case, the bank had aided the wrongdoing of the treasurer by paying irregular checks and at the same time holding a well-founded suspicion that all was not right, its negligence and wrongdoing was of such nature as to entitle the surety to recover by subrogation.

Under such circumstances, the bank's equities are neither superior nor equal. It participated in the wrongdoing. But for appellant's negligence, the defalcations could not have been accomplished. Appellant was not innocent in the transactions.

"It would seem clear that where a bank has aided the improper withdrawal of trust funds the surety on the official bond of the trustee, having paid the loss thereby sustained by the cestui qui trust, may recover of the bank the loss sustained being subrogated to the rights of the cestui que trust." 3 R. C. L. § 179, p. 551.

■ 7. There is no merit to the contention that the action by the surety company is barred by laches or estoppel. The evidence disclosed that the school authorities had no knowledge of the defalcations of the treasurer until about the time he absconded. It does not appear that they, at that time, owed any duty to check up on his transactions. Moreover, the rule is that if the bank was negligent, that is, "if its officers are found to have failed to exercise due and reasonable care * * * then the subsequent negligence of the depositor, his failure to perform his duty in examining his pass book and vouchers with reasonable care and report to the bank in a reasonable time any errors or mistakes, will constitute no defense, and it is generally a question for the jury whether the bank was negligent." 3 R. C. L. § 168, p. 539.

An examination of the evidence in the case discloses full support for the decree of the court below. Other questions raised by the appellant have been examined and found to be without merit.

The decree should be and is affirmed.