## Commonwealth, for Use of Coleman et al., v. Farmers Deposit Bank of Frankfort, Ky.

(Decided June 16, 1936.)

R. W. KEENON, B. L. KESSINGER, C. E. RANKIN, CLIFFORD SMITH and BRUCE & BULLITT for appellants.

LESLIE W. MORRIS and MARION RIDER for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant Clell Coleman served as auditor of public acounts of the commonwealth of Kentucky for a term of four years, beginning the first Monday in January, 1928. Before he assumed the duties of the office he executed to the commonwealth of Kentucky, as required by statute, an official bond in the penal sum of $200,000, which was signed by the appellant Fidelity & Deposit Company of Maryland, as surety. Among the clerks in the auditor's office appointed by Coleman was one Ernest Marrs, who was designated claim clerk, and the auditor assigned to him the duty to investigate and audit the general claims presented against the commonwealth. Marrs executed and delivered to Coleman an indemnifying bond in the penal sum of $5,000, for the faithful performance of his duties, which was signed by appellant Fidelity & Deposit Company of Maryland as surety. During the time he acted as claim clerk it was Marrs' custom, after auditing and investigating a claim and finding it to be correct, to prepare a state warrant drawn on the treasurer directing its payment and then to present it to the auditor for his signature. The auditor, relying upon the representation of Marrs, would sign the warrant and return it to Marrs for transmission to the payee designated therein. Shortly after Coleman's term of office

expired it was discovered by the commonwealth that Marrs had defrauded it out of a large sum of money. The method employed by him was substantially this:

He would make up a false claim, usually in some fictitious name, and present to the auditor a state warrant drawn on the treasurer for the amount of the purported claim. The auditor would sign the warrant and return it to Marrs, but instead of mailing it to the designated payee Marrs would indorse the payee's name on the back of the warrant and present it to the treasurer for payment. The treasurer would issue the check of the commonwealth of Kentucky in payment of such purported claim and deliver it to Marrs, who would indorse the payee's name on the back, then write his own name on the check or deliver it to a third person without his indorsement and obtain money on it. Each check was regular on its face in every respect, and was drawn against funds belonging to the commonwealth on deposit in the Farmers Deposit Bank, a state depository. The total number of fraudulent warrants prepared by Marrs upon which checks were issued was 106, aggregating the sum of $14,069.03.

The commonwealth of Kentucky brought an action in the Franklin circuit court against Coleman and the Fidelity & Deposit Company of Maryland, the surety on his official bond, for the amount of the loss, and recovered a judgment for the full amount. It was adjudged that the defendants, upon payment of the judgment, were entitled to have assigned to them by the commonwealth and were entitled to be subrogated to all the rights, privileges, causes of action, and remedies, both legal and equitable, which the commonwealth had against all other persons or firms in the subject of the litigation. Coleman and the Fidelity & Deposit Company of Maryland paid to the commonwealth the amount of the judgment, and a written agreement was entered into between the parties in which the commonwealth acknowledged payment of the judgment, and assigned to the defendants in that action all of its rights and interests therein. Thereafter this action was instituted by Coleman and the Fidelity & Deposit Company of Maryland against the Farmers Deposit Bank to recover from it the amount of the loss caused by Marrs' fraud upon the theory that the checks had been

paid by the bank upon the forged indorsements of the payees and that the plaintiffs were subrogated to the rights of the commonwealth. The bank filed an answer and cross-petition, which consists of 59 pages of type-written matter. It pleaded estoppel, negligence of the auditor in failing to audit and investigate the claims presented by him as required by law, and many other defenses which it is unnecessary to mention. In its cross-petition it sought to make parties to the action a number of banks and individuals who had indorsed and presented to it for payment the checks in question. The plaintiffs filed an amended petition in which they alleged that it was made the duty of the auditor of public accounts to audit, investigate, and determine the correctness of claims presented against the commonwealth of Kentucky, and that on account of the great number of claims presented it was impossible for him to audit all of the claims personally, and that it was necessary to delegate that duty to a clerk, and that he did delegate the duty to Marrs, the claim clerk. In their amended petition they set out in detail the method employed by Marrs in preparing and presenting the fraudulent claims, procuring warrants and checks, and obtaining the money thereon. A second amended petition was filed in which it was alleged that it was the duty of the bank to know that the payee designated therein had duly indorsed the checks in question before accepting them or charging same to the account of the commonwealth of Kentucky, and that the acceptance of the checks by it and the payment of the amounts named therein when none of them had been indorsed by the payees designated therein constituted negligence upon the part of the bank. Demurrers to the petition as amended and to the answer and each paragraph thereof were filed. The court overruled the demurrer to the answer and to each paragraph thereof, and carried the same back to the petition and sustained the general demurrer to the petition as amended. The plaintiffs declined to plead further, and their petition as amended was dismissed, and from that judgment they have appealed.

It may be assumed for the purposes of this opinion that the bank was liable to the commonwealth for the loss sustained by it by reason of the payment by the bank of checks bearing forged indorsements. The gen-

eral rule is that the depository's duty to the depositor to pay only on the genuine indorsement of the payee is absolute. A bank must ascertain whether or not the indorsement of the payee designated in the check is genuine, and unless it does so it pays out its depositor's funds at its peril. Kentucky Title Savings Bank & Trust Co. v. Dunavan, 205 Ky. 801, 266 S. W. 667; Commercial Bank of Grayson v. Arden & Fraley, 177 Ky. 520, 197 S. W. 951, L. R. A. 1918B, 320; Henderson Trust Co. v. Ragan, 52 S. W. 848, 21 Ky. Law Rep. 601.

Section 3720b-9 of the Kentucky Statutes provides that an instrument is payable to bearer "when it is payable to the order of a fictitious or non-existing person, and such fact was known to the person making it so payable." In the instant case, the fact that the checks in question were payable to the order of fictitious persons was not known to the principal, and consequently this section has no application. Knowledge by the maker of the fictitious character of the payee is essential to characterize the instrument as one payable to bearer. Mueller & Martin v. Liberty Insurance Bank, 187 Ky. 44, 218 S. W. 465. The rule is stated thus in 5 R. C. L. 497:

"When the legislature declared that a check payable to a 'fictitious or nonexisting person' is to be regarded as payable to bearer, it meant a fictitious person to be one who, though named as payee in a check, has no right to it, or the proceeds of it, because the drawer of it so intended, and it, therefore, matters not whether the name of the payee used by him be that of one living or dead, or of one who never existed. The maker's intention is the controlling consideration which determines the character of such paper. It cannot be treated as payable to bearer unless the maker knows the payee to be fictitious and actually intends to make the paper payable to a fictitious person."

It is the general rule that where an employee or agent fraudulently procures his employer or principal to issue checks to fictitious persons and the drawer has no knowledge of their fictitious character the depository must lose as between it and the depositor if it pays them on a forged indorsement, unless the drawer himself was guilty of such conduct as would constitute

estoppel. McCornack v. Central State Bank, 203 Iowa, 833, 211 N. W. 542, 52 A. L. R. 1297; C. E. Erickson Co. v. Iowa National Bank, 211 Iowa, 495, 230 N. W. 342; Robertson Banking Co. v. Brasfield, 202 Ala. 167, 79 So. 651; Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; Detroit Piston Ring Co. v. Wayne County & Home Savings Bank, 252 Mich. 163, 233 N. W. 185, 75 A. L. R. 1273. A number of courts apply the equitable rule that where two innocent persons must suffer loss by fraud or misconduct of a third person, he who first reposes the confidence and commits the first oversight must bear the loss. Defiance Lumber Co. v. Bank of California, 180 Wash. 533, 41 P. (2d) 135, 99 A. L. R. 426.

Conceding for the present that the commonwealth, under the facts alleged in the petition, as amended, was entitled to recover from the bank, the right of Coleman and his surety to be subrogated to the rights of the commonwealth presents an entirely different question. The doctrine of subrogation is of equitable origin and cannot be invoked to defeat a superior equity. Maryland Casualty Co. v. Walker, 257 Ky. 397, 78 S. W. (2d) 34; Vance v. Atherton, 252 Ky. 591, 67 S. W. (2d) 968; Louisville Trust Co. v. Royal Indemnity Co., 230 Ky. 482, 20 S. W. (2d) 71; Com. v. Federal Land Bank of Louisville, 226 Ky. 628, 11 S. W. (2d) 698; Fidelity & Casualty Co. of N. Y. v. Farmers' & Merchants' Bank of Tolu, 223 Ky. 32, 2 S. W. (2d) 1048; Probst v. Wigginton, 213 Ky. 610, 281 S. W. 834. In 25 R. C. L. 1314, it is said:

"There are numerous decisions to the effect that the doctrine and practice of subrogation being of equitable origin and nature, its operation is controlled and governed by the principles of equity, and it is only when an applicant has an equity to invoke and where innocent persons will not be injured that a court can interfere. To entitle one to subrogation, his equity must be strong and his case clear."

The liability of Coleman and his surety to the commonwealth was entirely distinct from the liability of the bank to the commonwealth. The bank's liability, if any, resulted from its breach of duty not to pay out its depositor's money on forged indorsements. Coleman's liability to the commonwealth resulted from his neglect

to audit and investigate properly the claims against the commonwealth presented to him, and from the statute (Ky. St. sec. 147) making him liable for the acts of the clerks in his office. He was liable for any loss occasioned either by his own negligence or by the fraudulent acts of his clerks. He was primarily liable to the commonwealth. When he signed the warrant directing the treasurer to issue a check to a fictitious payee, he committed an act which was the proximate cause of the loss. The bank did not participate in this act or in the fraudulent conduct of Marrs. Even if negligent in failing to ascertain that the indorsements of the payees designated in the checks were not genuine, its negligence was not the primary cause of the loss.

The auditor, by signing the warrants which his unfaithful clerk presented to him, set in motion the chain of circumstances which eventually caused the loss. The checks were apparently regular in every respect when they were presented to the bank, and many of them bore several genuine indorsements subsequent to the forged indorsement of the fictitious payee, and in each instance the last indorser who presented the check for payment was identified. Undoubtedly Coleman was entitled to be subrogated to the rights of the commonwealth against Marrs, the wrong doer, but as between Coleman and the bank, the latter, under the facts alleged in the petition as amended, has a superior equity, and Coleman is not entitled to be subrogated. The surety's rights, of course, rise no higher than its principal's. In Citizens' Union National Bank v. Terrell, 244 Ky. 16, 50 S. W. (2d) 60, 64, the facts are not exactly identical to the facts in this case, but they are very similar, and the rules applied there are applicable here. Terrell issued a check to Joe Cunningham and placed it in an envelope addressed to the payee at Louisville, Ky. There were two Joe Cunninghams, and the wrong Joe received and cashed the check. It was held that as between the Citizens Union National Bank, which cashed the check, and Terrell, the drawer, the latter must bear the loss, and the court applied the rule that where one of two innocent parties must suffer because of fraud or forgery, the loss must be borne by the one who was first at fault and whose conduct made it possible. In the course of the opinion it was said:

"If the facts and circumstances in this case do· not estop and preclude Mr. Terrell from setting up and asserting the forged indorsement of the payee's name to the check, it would [be] difficult indeed to conceive of a case where the drawer of a check would be so estopped and precluded. Clearly it was his own act in unwittingly placing a check in the hands of an imposter bearing the same name as the person for whom it was intended that facilitated and brought about the fraud and forgery. In such circumstances the principles of justice, morality, and sound public policy demand that he and not the party misled by his act and conduct should bear the loss occasioned thereby."

Appellants insist that the question of Coleman's negligence is not presented, and that the sole question to be determined is whether or not the petition as amended states a cause of action against the appellee. The amended petition, however, sets out in full all the facts, including the scheme employed by Marrs, the relationship existing between him and Coleman, and the latter's method of approving claims presented to him and issuing warrants to fictitious payees. The circuit court properly sustained the demurrer to the petition as amended, and the judgment accordingly is affirmed.