## FIDELITY & DEPOSIT CO. OF MARYLAND v. CITIZENS NAT. BANK OF WACO.*

### No. 8774.

Circuit Court of Appeals, Fifth Circuit.

Jan. 4, 1939.

*Rehearing denied — F.2d —

808

HUTCHESON, Circuit Judge, dissenting.

———◆———

Albert B. Hall, of Dallas, Tex., for appellant.

H. M. Richey, of Waco, Tex., for appellee.

Before SIBLEY and HUTCHESON, Circuit Judges, and ·DEAVER, District Judge.

HUTCHESON, Circuit Judge.

Appellant was surety for one Gayle, the tax collector of McLennan County. Called upon to pay, and having made good to the State a shortage in his accounts of $52,268.-39, it brougñt this suit against appellee to recover as subrogee of the State the sums so paid.

Its claim was that though, as county depository appellee was obligated by statute, Art. 7250, Revised Statutes of Texas, "except as to compensation due such tax collector as shown by his approved reports," to pay "tax money deposited" in it, "only to treasurers entitled to receive the same, on checks drawn by such tax collector in favor of such treasurer", it had undertaken to charge against the tax collector's deposits with it sums paid out by it aggregating $52,268.39, none of. which represented either payments to treasurers entitled to receive the same, or the tax collector's compensation as shown by his approved reports; that because of the said sums so paid out by it as aforesaid, not to treasurers, nor for tax collector's compensation and not accounted for to the State, the tax collector, plaintiff his surety, and the defendant bank had become obligated to the State; and plaintiff as surety, having paid the State, had been subrogated to the State's right against the tax collector for having converted, and against the Bank for having permitted the tax collector to convert, said moneys to his own use and benefit.

The defense in general was that without collusion with or knowledge of. Gayle's unlawful misappropriations of money, the Bank had innocently honored his checks, drawn as tax collector, in the good faith, and honest, belief that they were being drawn for a public purpose and in accordance with law; that under the arrangement the Bank ñad made with him it had a right, indeed was compelled, to honor those checks as drawn; that it was therefore not liable to the State for the misappropriation by the collector, because it was innocent of intent to do wrong and because the tax collector had a right in law to handle and draw the funds he did, and if he did not have such right, the practices employed by him in handling the money were well known to the State and County, and no complaint was at any time made against, or action taken to correct, them.

There was a further defense that assuming that the Bank would have been liable to the State, the surety could not claim subrogation to the State's claim, because the Bank was itself an innocent victim of fraudulent acts of the tax collector, the surety's principal, and its equity for protection against the principal's fraud was higher than the surety's equity for indemnity.

There was a further defense that Gayle had failed to deposit in the bank as depository, as he was required to do by Article 2549 Rev.Stats., Vernon's Ann.Civ.St.Tex. art. 2549,[1] all of the moneys collected by

[1] "It shall also be the duty of the tax collector of such county to deposit all taxes collected by him, or under his authority, for the State and such county and its various districts and other municipal subdivisions, in such depository * * * as soon as collected. * * *

If the tax collector of such county shall fail or refuse to deposit tax money collected as herein required, he shall be liable to such depository * * * for ten per cent upon the amount not so deposited and shall in addition be liable to the State and county and its various dis-

him for the State; and that the shortage really occurred not in regard to moneys deposited in the Bank, because they were all accounted for, but in regard to moneys collected by him and not deposited in the Bank.

The Court found that following a ruling of the Attorney General given to the Comptroller that if a county depository accepts from the tax collector checks and drafts for collection only, the Bank would not be liable for interest until the drafts were actually collected and the amounts collected credited to the collector's account; the Bank and Gayle adopted the policy of having Gayle primarily deposit all items received by him not to his depository account, but in a collection account, Gayle to later distribute the sums to his various depository accounts. He did this by drawing his checks as tax collector from time to time against the collection account. All of the moneys Gayle deposited in this manner to his various depository accounts had been accounted for. But the amounts so deposited were less by more than $52,693.68 than the amounts he had deposited in and drawn out of his collection account.

The Court further found that the bond executed by plaintiff as tax collector covered his collections of motor vehicle fees kept by him not in defendant Bank, but in the First National Bank of Waco; that his commissions for collecting motor vehicle fees amounted to $41,799.65, but he actually drew out of the highway fund account $53,657.20, an excess of $11,857.65 over his proper fees; that he made up this excess by checks drawn on the collection account he kept in defendant Bank; that the plaintiff bonding company got the benefit of this withdrawal, because if Gayle had not checked it out of defendant Bank he would have been short in the highway fund account, which was also covered by plaintiff's bond, $11,857.55; that Gayle failed to deposit with defendant Bank for credit to any account kept by him in that Bank $39,351.95 of tax moneys he had collected; that his shortage resulted from the $39,-351.95 which he failed to deposit, and the $11,857.55 which he drew from defendant Bank to cover his overdraft in the highway fund account; that his shortage was the result of his embezzlement and defalcation, and the defendant Bank did not participate

in same, or have any knowledge or notice of such shortage, nor did it receive any benefits therefrom; that all of the checks paid by the Bank on the collection account or any tax collector's account maintained by Gayle with it were properly signed by Gibson Gayle as tax collector.

There was no definite proof as to the particular moneys that Gayle converted to his own use, whether they were those he had not deposited in the Bank, or were those he had put in and then drawn out of it. The proof as to deposits and withdrawals amounted only to this; that he deposited more money in the collection account than he later distributed to his tax collection depository accounts; that all of the moneys which he had so distributed were correctly accounted for; and that crediting him on all of his accounts with all of his commissions and all other proper charges, he had accounted for all the moneys he had collected, except $52,268.39, the amount in controversy.

The District Judge was of the opinion that the surety had failed to sustain the burden of proof upon it to trace the lost moneys into defendant Bank, and show that the losses had occurred on account of moneys the tax collector had improperly drawn from the Bank. He was further of the opinion that the statute on which the surety relied, requiring moneys to be drawn from the depository by checks payable to the treasurers, was not exclusive; that the tax collector had the right to draw out moneys from the Bank by checks and deposit them with the treasurer in cash; that the Bank was bound to honor checks drawn by him as tax collector on the collection account; and finally, he was of the opinion that since the Bank was innocent of any wrongdoing, and did not know or have reason to believe that Gayle was misappropriating moneys, the surety had no equity against it to recover losses caused by the fraud of the principal.

Here appellant challenges all of these findings. It insists (1) that its burden was discharged when it showed that Gayle drew moneys in excess of the $52,268.39 it sued for from the Bank, not on checks payable to the treasurer, as required by the statute, but on checks payable to himself as tax collector, and that it then became the Bank's burden to trace those moneys thus

tricts and other municipal subdivisions for all sums which would have been earned had this provision been complied with,

which interest may be recovered in a suit by the State."

wrongly drawn, into the treasury. It urges therefore that the Court erred in its finding that the surety had not sustained its burden, for the proof indisputably established that Gayle checked out more than that sum, while the Bank wholly failed to show, as it was in law bound to do, that all of the moneys Gayle had wrongfully withdrawn from it had been accounted for.

It challenges the legal conclusions of the District Judge: (1) That the statute, Art. 7250, requiring payments only to treasurers was not exclusive, and (2) that the Bank was compelled to honor Gayle's checks, so that if so advised he might, under some other provision of the statute, transmit the funds to the treasurer himself. Finally, it challenges the Court's conclusions, (a) that it was without equity against the Bank, because the Bank was innocent in the transaction; and (b) that to require it to pay would be to create an equity for the surety out of his principal's wrongdoing.

It challenges these on the ground that here is no case, as the findings assume, of withdrawals which the tax collector was entitled to make. Here is a case of withdrawals on checks drawn, as the Bank knew, contrary to law and therefore withdrawals which must be considered in law as not having occurred, and the Bank must therefore be held to have the funds still on deposit available to the State and to appellant as its subrogee.

It challenges the conclusions further on the ground that it, as surety, was entitled to rely upon it that the collector would, as required by Art. 2549 supra, deposit all taxes collected by him in the depository as soon as collected; that once deposited with the Bank the money could not be withdrawn on the tax collector's checks under Art. 7250 supra, unless drawn in favor of the treasurers, and that because of the failure of the Bank to observe the positive terms of this Article, with knowledge of which it was charged, it must be regarded as having wilfully cooperated with Gayle to violate the law, and as having no equity against the surety's claim for subrogation.

█ We all agree with appellant that once the moneys were deposited by the collector in the Bank as the authorized public depository, they could not be lawfully withdrawn except by checks payable to the treasurers, and if there had been any improper withdrawals of any of the funds after they had been distributed to the respective accounts the Bank would be liable.

What makes this case difficult is the agreement the Bank and the tax collector had to first deposit all moneys in a collection account, and then later re-deposit them in the depository to the various depository accounts.

If this agreement was lawful, it put the Bank in the position of receiving the funds in the first instance, not as a depository, but for collection only, and of being entitled to treat them as not actually deposited with it as depository until, in accordance with the arrangement it had made, they were distributed to the depository accounts. It would also be entitled, as it had no knowledge of the tax collector's wrongdoings, to permit him to withdraw them on his checks for the purpose of distribution. If this was a lawful agreement, Art. 7250, on which appellant relies as imposing a direct obligation on the Bank for the care of the moneys, the breach of which would make it a party to the collector's wrongdoing, did not come into play. For the moneys on deposit in, and lost from, the collector's account, had not been received in the depository, and the Bank had the right, in good faith, in the absence of facts putting it upon knowledge, to rely upon the tax collector to make the proper apportionment in accordance with the agreement.

█ If the agreement was lawful, the Bank, in relying upon the tax collector's good faith, was in the position of the bank in American Surety Co. v. Lewis State Bank, 5 Cir., 58 F.2d 559, and having been misled and imposed upon by the tax collector, his surety may not recover against the Bank for his having done so. On the other hand, if the appellant is right in the position it takes, that the agreement was not lawful, and that the invoked Articles supra required the tax collector to deposit his collections in the Bank as depository, and the Bank not to pay them out except on checks in favor of treasurers, and appellant as surety was entitled to rely on the Bank's observance of the duty thus imposed upon it, we all think appellant is right in its conclusion that it should have subrogation. For here would be no case of a Bank being misled or deceived by the fraud of the surety's principal, as in American Surety Co. v. Lewis State Bank, supra. National Surety Co. v. Arosin, 8 Cir., 198 F. 605; American Surety Co. v. Citizens' National Bank, 8 Cir., 294 F. 609; American Surety Co. v. Robinson, 5 Cir., 53 F.2d 22; Commonwealth v. Farmers Deposit Bank, 264 Ky. 839, 95 S.W.2d 793.

The case would be one of a bank, in violation of a positive law, on compliance with which the surety had a right to rely, turning over to a collector on his check money which it was charged with keeping, and with paying over "only to treasurers entitled to receive the same, on checks drawn * * * in favor of such treasurer." Cf. Richfield National Bank v. American Surety Co., 8 Cir., 39 F.2d 387, 388; American National Bank v. Fidelity & Deposit Co. of Maryland, 129 Ga. 126, 58 S.E. 867, 12 Ann. Cas. 666.

Further, if this is the meaning and effect of the statutes invoked, the trial court was wrong in holding that the surety did not sustain its burden; for all it had to do was to show that the Bank paid moneys out on checks which it knew, in law, it was not entitled to honor, and the burden then shifted to the Bank to account for the funds drawn on these checks.

The majority think the agreement was lawful only to the extent that it permitted the Bank to avoid the payment of interest while checks deposited for collection were in the process of collection. They think it was unlawful insofar as it undertook to change or affect the responsibility of the Bank for moneys deposited with it, or to permit the Bank to pay out the moneys, except as required by the statute.

They think, in short, that the agreement was lawful only to the point of saving interest until the items were collected, but that it did not have the effect of preventing the funds from being in the depository and held by the Bank as such from and after their collection.

They agree with appellant, therefore, that the Bank is liable to the State for paying out the funds as it did; that the surety is subrogated to the State's rights, and that the judgment must be reversed and the cause remanded, for further proceedings consistent with these views.

It is the writer's view that the Bank is not liable to the surety; that whether the agreement under which the funds were deposited in the collection account had the legal effect the Bank attributes to it, the Bank in good faith, and with an honest purpose, thought that it had that effect, and acting under it, in good faith and with honest purpose, it was deceived and overreached by appellant's principal, the tax collector.

Certainly the tax collector and the surety were liable to the State for the tax collector's fraud. Miller v. State, Tex.Civ. App., 53 S.W.2d 792. The writer does not see how the surety, whose bond guaranteed the fidelity of the principal, can recover from the Bank because of his infidelity, where the proof, as here, shows that the Bank was wholly innocent of any intentional or wilful wrongdoing, and if a wrongdoer at all, was only constructively so, by entering into an agreement with the tax collector which the law did not precisely allow. He therefore dissents from the opinion for, and the judgment of, reversal.

Reversed and remanded for further proceedings not inconsistent herewith.

HUTCHESON, Circuit Judge, dissents.